IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Irina Shvekh,                          :
                    Appellant         :
                                       :
          v.                           :    No. 929 C.D. 2016
                                       :    Argued: December 15, 2016
The Zoning Hearing Board of            :
Stroud Township and Township           :
of Stroud                              :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JULIA K. HEARTHWAY, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: February 6, 2017

          Irina Shvekh appeals an order of the Court of Common Pleas of
Monroe County (trial court) that affirmed the decision of the Zoning Hearing
Board (Zoning Board) of Stroud Township (Township). The Zoning Board denied
Shvekh's appeal of an enforcement notice citing her for operating a tourist home in
violation of the Township's Zoning Ordinance.[1] Shvekh maintains that the
vacation rental of her home is not addressed in the Zoning Ordinance and, thus,
permissible. For the following reasons, we reverse.

          Shvekh and her son-in-law, John-Pierre Conques, own real property at
647 Metzgar Road, Stroudsburg (Property), which is located in the Township's S-1
Special and Recreational Zoning District (S-1 District). The Property is comprised
of approximately three acres and improved with a single-family home with five
bedrooms and three and one-half bathrooms.

---

[1] STROUD TOWNSHIP ZONING ORDINANCE (1998) (Zoning Ordinance).

On May 6, 2015, the Township's Zoning Officer issued a notice of violation to Shvekh asserting that the Property was being used as a tourist home, which is not permitted within the S-1 District.[2] Shvekh appealed the notice, and the Zoning Board conducted hearings on July 15, 2015.

The Zoning Officer testified at the hearing that tourist homes are permitted in the C-1, C-2, and C-3 Zoning Districts but not in the S-1 District. R.R. 22a-23a; Notes of Testimony, 7/15/2015, at 20-21 (N.T. __). The Zoning Officer also testified that the Property was listed on websites for vacation home rentals as "Tannersville holiday house," which "welcome[s] events, birthdays, weddings, up to a hundred people." R.R. 26a-27a; N.T. 24-25. The Zoning Officer testified that the Township had received complaints from neighbors about the rentals.

The Zoning Officer did not explain how the Property was being used as a "tourist home." She agreed with Shvekh's counsel that a "tourist home" refers to a use where the owner rents out single bedrooms to different people, and not the entire dwelling to one group. R.R. 38a-39a; N.T. 36-37. Nevertheless, the Zoning Officer opined that because the Property was rented out for short periods of time,

---

[2] Section 3.222 of the Zoning Ordinance, which governs the S-1 District, provides:

> The purpose of the Special and Recreational District is to preserve open space, agriculture, steep slopes, wetlands, scenic viewpoints and other unique and aesthetic environmental features. To provide for the continuation and protection of large lot residential development and rural residential character with on-lot water and sewage facilities. Outdoor recreational facilities and uses would be compatible with the character of this District.

ZONING ORDINANCE, Article III, §3.222; Reproduced Record at 230a (R.R. __). The Ordinance Use Schedule further provides that single-family dwellings and single-family clusterings are permitted within the S-1 District; hotels, motels, resorts and other lodging services are not permitted. ZONING ORDINANCE, Use Schedule; R.R. 228a-229a.

some as short as a weekend, it was being used as a tourist home. R.R. 38a; N.T. 36.

Svetlana Conques, who is Shvekh's daughter and the wife of John-Pierre Conques, testified that her family purchased the Property in 2013 with the intent to occupy it as their primary residence. However, she and her husband were unable to sell their other home. The couple subsequently separated. Mrs. Conques testified that she and her mother, Shvekh, reside at 228 Glenoak Drive, East Stroudsburg, and her husband lives in New Jersey. In light of these developments, the family decided to rent out the Property from time to time.

Mrs. Conques testified that she listed the Property for rent on VRBO, a website that advertises vacation homes, directly and through other websites. The website described the Property as a five-bedroom house that can accommodate up to 15 overnight guests. Mrs. Conques testified that she did not know the origin of the description "Tannersville holiday house" that appeared online. She testified that the Property had never been advertised as a place for events for up to 100 people and that she did not allow college parties or proms at the Property. On occasion, she checked renters' identification to make sure that they were "a family or several families staying together." R.R. 130a; N.T. 128. She testified that the standard lease agreement stated that birthdays and anniversaries could be celebrated there "only as a family gathering." R.R. 127a; N.T. 125. The lease agreement requires a minimum rental of two nights, and it does not include any meals.

Mrs. Conques testified that she and her family occupy the Property approximately one week a month, when it is not rented out. Her husband also stays at the Property with his family. Mrs. Conques visits the Property several

3

times a week to check on it. Over the 12 months prior to the hearing, she rented the Property 20 to 25 times. One tenant stayed for a month; others stayed for two weeks or less. There were three months when the Property was not rented at all. Mrs. Conques denied that she is engaged in a commercial business.

The Zoning Board also heard testimony from four of Shvekh's neighbors: Stephen Predmore, Richard Croll, Giovanny Nunez, and Betty Kemp. They complained that renters at the Property created noise and other disturbances in the neighborhood.

On November 4, 2015, the Zoning Board denied Shvekh's appeal, finding that Shvekh had been engaged in short-term rentals of the Property on a continuous basis; that neither Shvekh nor Mr. Conques claimed the Property as a primary residence; and that the Property was rented to groups of more than three persons unrelated by blood or marriage. The Board found that the lease agreement used by Shvekh did not limit the number of families who may occupy the premises or place any restriction on the relationship of the persons occupying the Property. The Board further found that the tenants of the Shvekh Property "[were] often groups who [came] together for the weekend and then [returned] to their own families and/or households." Board Decision at 9.

The Zoning Board concluded that using the Property for the "short-term, transient rentals [was] more typical of a hotel or tourist home, where vacationers or travelers would not be considered to be maintaining a residence in the ordinary meaning of the phrase." Board Decision at 10. Because a tourist home is not permitted in the S-1 District, the Board held that Shvekh's use of the Property violated the Zoning Ordinance.

4

To reach its conclusion, the Zoning Board relied on our Supreme Court's decision in *Albert v. Zoning Hearing Board of North Abington Township*, 854 A.2d 401, 410 (Pa. 2004), which established the principle that a single-family home is one "sufficiently stable and permanent so as not to be fairly characterized as purely transient." A home used by "purely transient" occupants will violate a zoning requirement that limits the permitted use to a single family residence. Board Decision at 12.

Shvekh appealed to the trial court, and it affirmed the Zoning Board's decision without taking additional evidence. Shvekh now appeals to this Court.[3]

On appeal, Shvekh argues that the Zoning Board erred. She contends that the Zoning Board did not give a liberal interpretation to the Zoning Ordinance to permit her the broadest possible use of her property, as it is required to do. She also argues that the Zoning Ordinance is unconstitutionally vague because its definitions for "family" and "group (family type) dwelling occupancy" conflict. We address these issues *seriatim*.

In her first issue, Shvekh argues that by holding that the Property was being used as a "tourist home," the Board construed the Zoning Ordinance in a way that cannot be reconciled with the actual language therein. The Zoning Officer acknowledged a tourist home is a use where the owner rents out less than the entire dwelling. By contrast, Shvekh rented out the entire home. Shvekh argues that she used the Property for "vacation rentals," which, under a "liberal construction of the Ordinance," is a permissible use of a "single-family dwelling."

---

[3] Where the trial court takes no additional evidence, this Court's review determines whether the zoning hearing board committed an error of law or abused its discretion. *Segal v. Zoning Hearing Board of Buckingham Township*, 771 A.2d 90, 94 n.6 (Pa. Cmwlth. 2001).

5

Shvekh Brief at 16. The Zoning Board's "overly narrow and rigid" interpretation of the Zoning Ordinance restricted her to "the narrowest use of her property." *Id.* at 11, 17. Shvekh further argues that the Board's reliance on *Albert* is misplaced because that case involved a halfway house for recovering alcoholics, which is dissimilar to a vacation rental of a single family home. *Id.* at 19-20.

A zoning hearing board "has an obligation to construe the words of an ordinance as broadly as possible to give the landowner the benefit of the least restrictive use when interpreting its own Zoning Code." *Riverfront Development Group, LLC v. City of Harrisburg Zoning Hearing Board*, 109 A.3d 358, 366 (Pa. Cmwlth. 2015). Any doubt must be resolved in favor of the landowner. It is an abuse of discretion for a zoning board to construe the terms of an ordinance for the intended purpose of restricting a property's use. *Id.* In construing local zoning ordinances, this Court "relies upon the common usage of the words and phrases contained therein and will construe that language in a sensible manner." *Id*.

With these principles in mind, we turn to the relevant provisions of the Zoning Ordinance. Section 2.266 of the Zoning Ordinance defines "dwelling" as:

> *Any building or portion thereof, designed or used exclusively as the residence for one or more persons.* The term "dwelling" shall not be deemed to include motel, rooming house, boarding house, tourist home, dormitory, fraternity, sorority house or other group residence, camps and campgrounds as defined herein.

ZONING ORDINANCE, Article II, §2.266 (emphasis added); R.R. 224a. Section 2.266(a) further defines a "single-family dwelling" as "[a] detached building, *designed for or occupied exclusively by one family*, except for a mobile home as

6

defined below." ZONING ORDINANCE, Article II, §2.266(a) (emphasis added); R.R. 224a. Section 2.276, in turn, defines "family" as:

> Any individual, or two (2) or more persons related by blood, marriage, legal adoption, foster placement, or a group of not more than three (3) persons who need not be related by blood or marriage, living together in a dwelling unit. A "family" shall not be deemed to include the occupants of a boarding house, rooming or lodging house, club, fraternity/sorority or hotel.

ZONING ORDINANCE, Article II, §2.276; R.R. 225a.

Section 2.414 of the Zoning Ordinance defines a "tourist home" as "[a] dwelling in which at least one but no more than six rooms are offered for overnight accommodations for transient guests for compensation." ZONING ORDINANCE, Article II, §2.414; R.R. 227a. Similarly, Section 2.372 defines "rooming or lodging" as "a situation in which an owner of a dwelling rents at least one (1) but not more than six (6) rooms for residential purposes, but does not furnish meals." ZONING ORDINANCE, Article II, §2.372; R.R. 226a.

The Zoning Board concluded that the Property was being used as a tourist home because the lease agreement does not limit the renters to a single family or a group of no more than three unrelated persons. In concluding that the vacation rentals of the Property made it the functional equivalent of a hotel or tourist home, the Zoning Board relied upon *Albert*, 854 A.2d 401.

In *Albert*, the landowner was granted a permit to operate a halfway house in a residential zoning district. The halfway house was designed for occupancy by six to fifteen women who had completed an in-patient rehabilitation program for drug and alcohol abuse. The average stay ranged from two to six months. The grant of the permit was appealed to the Supreme Court, which

concluded that a halfway house was not a permissible use in the residential zoning district.

The Supreme Court found that "inherent in the concept of 'family' and, in turn, in the concept of a 'single-family dwelling,' is a certain expectation of relative stability and permanence in the composition of the familial unit." *Albert*, 854 A.2d at 409. One of the benefits of single-family zoning districts, the Court found, was that

> they create residential neighborhoods in which the residents may develop a sense of community and a shared commitment to the common good of that community. Without some level of stability and permanence in the composition of the groups residing in such residential districts, this goal is necessarily subverted.

*Id*. The Supreme Court concluded that the residents at the proposed halfway house were "purely transient" and did not constitute a "family" under the zoning ordinance. Not only did the identity of residents "change on a fairly regular basis," the entire population of the halfway house would turn over two to six times a year. *Id.* at 410-11.

*Albert* is distinguishable. It concerned a halfway house used in a "purely transient" way. The owners did not rent the entire house to one group for a vacation purpose but, rather, bedrooms to different individuals.[4] *Albert* is also distinguishable because the halfway house required a license. Here, by contrast, the Zoning Board did not suggest that using a single-family dwelling for short-term vacation rentals requires a license of any type. Further, the Property is not used in

---

[4] The halfway house was more like a tourist home. ZONING ORDINANCE, Article II, §2.414; R.R. 227a.

8

a "purely transient" way because it is occupied at least once a month by the owners and their families.

Shvekh argues that this Court's decision in *Marchenko v. Zoning Hearing Board of Pocono Township*, 147 A.3d 947 (Pa. Cmwlth. 2016), should control the result of this case. In *Marchenko*, the owner used the property as her primary residence and resided at the property a majority of the time. She rented out the property on weekends by listing it on the Internet. We concluded that "the composition of the family living at the Property is not purely transient, and the Property is primarily used as a single-family dwelling by Marchenko." *Id.* at 950.

In the instant case, Shvekh does not use the Property as her primary residence and neither does her son-in-law. Although that was an important fact in *Marchenko*, it was not the controlling factor. Shvekh and her daughter, as well as her son-in-law, reside at the Property at least every month. What was controlling in *Marchenko* was that the zoning ordinance did not prohibit the owner of a "single-family dwelling" from renting it out. Accordingly, we held that

> [The Zoning Hearing Board] should have broadly interpreted the term "single-family dwelling" to allow this rental activity rather than straining to designate the activity as a prohibited lodge use, which the Ordinance does not define. Therefore, the ZHB erred in concluding that Marchenko's short-term rentals of the Property are prohibited in the R-1 District.

*Id.* at 950-51.

A zoning hearing board's interpretation of its own zoning ordinance is entitled to deference. *Smith v. Zoning Hearing Board of Huntingdon Borough*, 734 A.2d 55, 57 (Pa. Cmwlth. 1999). However, this principle of deference is balanced by the principle that any doubt must be resolved in favor of the landowner and the least restrictive use of the land. *Mt. Laurel Racing Association v. Zoning Hearing*

9

*Board, Municipality of Monroeville*, 458 A.2d 1043, 1044-45 (Pa. Cmwlth. 1983). This latter principle is grounded in Section 603.1 of the Pennsylvania Municipalities Planning Code (MPC), which provides that

> in interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of the property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction.

53 P.S. §10603.1.[5] Stated otherwise, a municipality cannot advance a new and strained interpretation of its zoning ordinance in order to effect what it would like the ordinance to say without an amendment. *Latimore Township v. Latimore Township Zoning Hearing Board*, 58 A.3d 883, 888 (Pa. Cmwlth. 2013).

Shvekh argues that the Zoning Board's interpretation of "tourist home" violated Section 603.1 of the MPC because it added an additional element – the frequency of the accommodation – to the definition, thereby expanding the restriction.[6] The Zoning Ordinance defines a "tourist home" as follows:

> A dwelling in which at least one but no more than six rooms are offered for overnight accommodation for transient guests for compensation.

---

[5] Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10603.1.

[6] In *Kohl v. New Sewickley Township Zoning Hearing Board*, 108 A.3d 961, 971 (Pa. Cmwlth. 2015), we stated that "an ordinance must establish a standard to operate uniformly and govern its administration and enforcement in all cases, and that an ordinance is invalid where it leaves its interpretation, administration or enforcement to the unbridled or ungoverned discretion, caprice or arbitrary action of the municipal legislative body of administrative bodies or officials." (*quoting Orwell Township Board of Supervisors v. Jewett*, 571 A.2d 1100, 1103 (Pa. 1990)).

10

ZONING ORDINANCE, Article II, §2.414; R.R. 227a. Similarly, "rooming or lodging" is defined as "a situation in which an owner of a dwelling rents at least one (1) but not more than six (6) rooms for residential purposes, but does not furnish meals." ZONING ORDINANCE, Article II, §2.372; R.R. 226a. The Zoning Officer agreed that where an owner rents out the entire dwelling, as opposed to individual rooms, this activity does not meet the definition of "tourist home." R.R. 38a.

The Zoning Ordinance defines a "single-family dwelling" as "a detached building *designed for* or occupied exclusively by one family." ZONING ORDINANCE, Article II, §2.266(a) (emphasis added); R.R. 224a. There is no question that the Property is "designed for" one family. The ordinance makes "occupied exclusively by one family" an alternate way to meet the definition of "single family dwelling." It is significant that the two alternatives are separated by the disjunctive "or," not the conjunctive "and." Further, the Zoning Ordinance does not define occupancy in a way that precludes vacation rentals. As in *Marchenko*, there is no provision in the Zoning Ordinance that prohibits the owner of a single-family home from renting it out from time to time to vacationers.

AirBnB has expanded the possible uses of a single-family dwelling, and the Township can address these new uses in the Zoning Ordinance. However, amendments cannot be effected by shoe-horning a use that involves renting an entire single-family home to vacationers into the definition of "tourist home." The Property meets the definition of single-family residence because it has been "*designed for or* occupied exclusively for one family." ZONING ORDINANCE, Article II, §2.266(a)(emphasis added); R.R. 224a. The vacation rental of the entire home bears no relation to the bedroom-by-bedroom rental that is the hallmark of a

11

tourist home, as the Zoning Officer herself acknowledged. We agree with Shvekh that the Zoning Board sought to expand the definition of "tourist home" to include any short term rental, without any support in the language of the Zoning Ordinance.

In her second issue, Shvekh argues that the Zoning Ordinance is unconstitutionally vague because the definitions of "family" and "group (family type) dwelling occupancy" conflict. As noted above, a "family" is defined as:

> Any individual, or two (2) or more persons related by blood, marriage, legal adoption, foster placement, or a group of not more than three (3) persons who need not be related by blood or marriage, living together in a dwelling unit. A "family" shall not be deemed to include the occupants of a boarding house, rooming or lodging house, club, fraternity/sorority or hotel.

ZONING ORDINANCE, Article II, §2.276; R.R. 225a. The Ordinance defines "group (family type) dwelling occupancy" as:

> [A] type of dwelling occupancy that could be located in any type of residential structure. This occupancy involves a group that lives together as a family with the group sharing costs and responsibilities for the dwelling wherein the group is not involved in some other land use activity such as rooming house or a club, or a fraternal organization, nor group care facility, nor group home, nor house of correction, nor halfway houses.

Shvekh Brief at 18.[7]

Shvekh argues that the definition of "family" restricts a group of unrelated individuals to no more than three, whereas the definition of "group (family type) dwelling occupancy" contains no such restriction on the number of

---

[7] The parties did not provide the Court with a copy of the Zoning Ordinance that contains the definition of "group (family type) dwelling occupancy."

unrelated individuals. We need not decide whether there is a conflict in the above definitions because the Board did not rely on the definition of "group (family type) dwelling occupancy" in reaching its decision. Further, the definition of "group (family type) dwelling occupancy" does not apply to Shvekh's use of the Property because the Board did not find that tenants share costs and responsibilities for the dwelling.

For all of the foregoing reasons, we reverse the trial court's decision.

_____

MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Irina Shvekh,                :
            Appellant      :
                            :
          v.              :   No. 929 C.D. 2016
                            :
The Zoning Hearing Board of     :
Stroud Township and Township   :
of Stroud                       :

## **O R D E R**

AND NOW, this 6th day of February, 2017, the order of the Court of Common Pleas of Monroe County dated April 15, 2016, in the above-captioned matter is hereby REVERSED.

_____
MARY HANNAH LEAVITT, President Judge