Slice of Life, LLC and :
Val Kleyman, :
                Appellants :
                 :
           v. :
                 :
Hamilton Township Zoning Hearing : No. 941 C.D. 2016
Board and Hamilton Township : Argued: April 20, 2017

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE JOSEPH M. COSGROVE, Judge (**P**)
                 HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION
BY JUDGE COSGROVE                  FILED: June 21, 2017

Slice of Life, LLC and Val Kleyman (Appellants) appeal from an Order of the Court of Common Pleas of Monroe County (Trial Court), which upheld the decision of the Hamilton Township (Township) Zoning Hearing Board (Board or Appellees). The Board's decision denied Appellants' land use request with respect to the use of a single-family dwelling as part of a transient lodging business. Upon review, we reverse.

## I. Background

Appellants own a property located at 473 Pensyl Creek Road, Stroudsburg, Pennsylvania, 18360, Monroe County PIN No. #07-6279-02-13-7188 (Property). (R.R. 1112a.) Slice of Life, LLC is a limited liability company

formed, organized, and existing under the laws of the Commonwealth of Pennsylvania and is the record owner of the Property. Val Kleyman is the sole member of Slice of Life, LLC and resides in Brooklyn, New York. (R.R. at 483a.)

On May 22, 2014, the Township Zoning Officer (Zoning Officer) issued an Enforcement Notice to Appellants charging them with violations of Article IV, Section 402.1 of the Township Zoning Ordinance (Ordinance) with respect to the Property. The Enforcement Notice charged Appellants with "[u]se of [the Property] as Hotel and/or other types of transient lodging, Rental of Single Family Residential Dwelling for transient tenancies." The Enforcement Notice required Appellants to cease this activity by May 31, 2014. (Tr. Ct. Op., 4/20/16 at 2.)

Appellants appealed the Enforcement Notice to the Board, which held hearings on August 6, September 2, October 7, November 12, and December 9, 2014, as well as on March 31, May 5, and June 2, 2015.[1] *Id.*

On June 12, 2015, the Board issued its decision, denying Appellants' appeal of the Enforcement Notice. (R.R. at 6a.) Thereafter, on July 1, 2015, Appellants filed their appeal with the Trial Court. *Id.*

On April 20, 2016, the Trial Court denied the appeal, thereby affirming the decision of the Board. *Id.* at 13a. The Court found the Board did not abuse its discretion when it upheld the violation under the Enforcement Notice because of the "extensive evidence"[2] that "the profit motive is the entire basis for

---

[1] After the Board conducted the August 6, 2014 hearing, Appellants added a Substantive Validity Challenge to their appeal on August 11, 2014. The Substantive Validity Challenge argued that the term "family" as defined in the Ordinance violates the United States and Pennsylvania Constitutions.

[2] (Tr. Ct. Op. at 7.)

2

the relationship"[3] of the property as a commercial enterprise. Consequently, it found that based upon the totality of the circumstances, Appellants are not operating a single family dwelling, but rather conducting a short-term, transient lodging business, using the Property as part of that business enterprise, with a clear profit motive at the Property. This appeal followed.[4]

## II. Issues

The issues as set forth in Appellants' brief are:

1. [Did the Trial Court err] in holding that Section 402.1 of the Ordinance does not permit the use of the Property as part of a short-term transient lodging enterprise?

2. [Did the Trial Court err] in holding that: "…while this Ordinance has a definition for 'family,' the principle behind *Albert v. Zoning Hearing Bd. of N. Abington Twp.*, 854 A.2d 401 (Pa. 2004)["] still applies?

3. [Did the Trial Court err] in holding that "it is clear there is no substantial evidence that Appellants' use of the Property does not [sic] qualify as a permitted use in that zoning district under the Ordinance?"

4. [Is] the Ordinance unconstitutionally vague because it prohibits Appellants' use of the Property?

---

[3] *Id.*

[4] "When no additional evidence is taken following the determination of a zoning hearing board, [this C]ourt's scope of review is limited to determining whether the zoning board committed an error of law or a manifest abuse of discretion in rendering its decision." *Cottone v. Zoning Hearing Bd. of Polk Twp.,* 954 A.2d 1271, 1275 n. 2 (Pa. Cmwlth. 2008). "An abuse of discretion occurs when the findings are not supported by substantial evidence in the record. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Coal Gas Recovery, L.P. v. Franklin Twp. Zoning Hearing Bd.,* 944 A.2d 832, 838 n. 9 (Pa. Cmwlth. 2008) (citation omitted).

5.  Does the Ordinance unconstitutionally exclude the use of a detached single-family dwelling for short-term rental?

6.  [Did the Trial Court err] in finding that "there is an identified, protected public interest at issue: the health, safety, and welfare of the public?"

7.  [Did the Trial Court err] when if [sic] failed to recognize that the U.S. Constitution is based on individual ownership of land and zoning regulations are in derogation of the common law, and, therefore, are to be strictly construed and interpreted to allow the widest use of land and, as a result the Trial Court's interpretation of the Ordinance is an unconstitutional taking of real estate?

(Appellants' Br. at 15-17.)

## III. Discussion

### A. The Ordinance

To begin, a thorough examination of the relevant parts of the Ordinance is necessary. Article I, Section 103 states, in pertinent part: "Purpose of Ordinance This [Ordinance],…was established in accordance with the objectives of the 'Pennsylvania Municipalities Planning Code' [(MPC)[5]]…."

Article IV, Section 402.1 further states in part:

Permitted Uses (Use Class 1 through 8)

"Permitted Uses" listed in Schedule I [of the Ordinance] shall require no special action by the Zoning Hearing Board or by the Planning Commission before a Zoning Permit is granted by the Zoning Officer.

Use Class 1 – Single Family Residential

---

[5] Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §§10101-11202.

4

Permitted uses include:

(a)     Single family detached dwellings

(R.R. at 49a (emphasis in original).)

"Dwelling" is defined in the Ordinance as: "[a] building or structure designed, arranged, intended, or used as the living quarters for one or more families living independantly [sic] of each other upon the premises.  The term 'dwelling' shall not be construed to include hotel, motel, rooming house or tourist home."  (R.R. at 37a.)

"Family" is defined in the Ordinance as:  "[o]ne or more person, occupying a dwelling unit, related by blood, marriage, or adoption, living together as a single housekeeping unit and using cooking facilities and certain rooms in common."  (R.R. at 38a.)

"Hotel" is defined in the Ordinance as:  "[a] building designed or used primarily as a temporary abiding place in which lodging is provided for compensation, with or without meals, containing ten (10) or more guest rooms, and having an outside entrance in common."  (R.R. at 40a.)

Schedule I lists the Regulations Governing The Use Of Land[6] in the Township based upon zoning districts.[7] *Id.* at 46a.  Pursuant to Schedule I, the Property is located in Zoning District "A," a residential zoning district in which

---

[6] Schedule I addresses three uses of land in the Township:  permitted uses, special uses and conditional uses.  Permitted uses are the only uses at issue in this appeal.

[7] Pursuant to Section 201 of the Ordinance, a "District" or "Zone" is defined as "[a] portion of the territory of [the] Township, within which certain regulations and requirements or various combinations thereof apply under the provisions of this Ordinance."  (R.R. at 46a.)

5

only single-family residential use is permitted.[8]  *Id.* at 189a; 646a-647a; Bd. Hr'g, Notes of Testimony (N.T.), 12/9/14, at 364-65.

The terms "single family," "tourist home," "transient lodging," and "transient tenancies" are not defined in the Ordinance.

## B.  Permitted Use

Based upon the language of the Ordinance, Appellees assert that the use of the Property did not meet any of the permitted uses set forth in Zoning District A.  They argue that a "transient lodging business" is not listed as a permitted use in any of the Zoning District A Use Classes.  Appellees assert "[Appellants] are collectively conducting a transient lodging business and using the [Property] as part of that business enterprise."  (Appellees' Br. at 10.)

Appellees argue this matter is governed and controlled by *Albert v. Zoning Hearing Board of North Abington Township*, 854 A.2d 401 (Pa. 2004), particularly with regard to Appellants' argument that their use of the Property is consistent with a single family residential use.  The *Albert* case focused the inquiry on whether a single-family dwelling could be used as a halfway house for recovering alcoholics and drug addicts in an R-1 low density residential zoning district.  The court in *Albert* was forced to examine the meaning of the term "family" as the term was not defined in the ordinance in question.  "In light of these definitions [contained in the ordinance], the parties and the lower tribunals agree that whether or not the Retreat qualified as a 'single-family detached dwelling' ultimately turns on the meaning of 'family' *which the [o]rdinance does*

---

[8] Single family use is the only permitted use in Zoning District "A" of the Ordinance at issue in this appeal.

6

*not define*." *Id.* at 404. (Emphasis added.) This ambiguity allowed the court to examine and incorporate the generally understood meaning of the term "family" into the zoning ordinance in that case.

Thus Appellees here assert that Appellants' use of the Property as part of a transient lodging enterprise is completely irreconcilable with the notion of a single family residential zoning district.

Appellants counter that the Township cannot read unspecified requirements into the meaning and definition of "family," which is set forth in the Ordinance. *See JALC Real Estate Corporation and Community Foundation for Human Development v. Zoning Hearing Board of Lower Salford Twp.*, 522 A.2d 710, 713 (Pa. Cmwlth. 1987) (where the zoning ordinance provides an operative definition of what constitutes 'family,' that definition controls); *see also Mary A. Reed v. The Zoning Hearing Board of West Deer Township*, 377 A.2d 1020 (Pa. Cmwlth. 1977).

In *Reed*, the township suggested a single-family dwelling could be more strictly interpreted and limited than the plain words of the definition itself. This Court rejected the township's argument that the definition of "mobile home" in the ordinance disqualified it from being a single-family detached dwelling, because the definition did not explicitly describe it as such. In finding for the property owner, the Court stated:

> *Restrictions imposed by zoning ordinances must be strictly construed; they may not be construed so as to restrict the use of land by implication.* The Township here asks us to infer from [the ordinance's] definition of a mobile home that a mobile home cannot be a single-family dwelling. Even if we were able to find support for such an inference in the definition, we could not have it prevail over a definition of a single-family dwelling [that] clearly include[es] a mobile home. (Emphasis added.)

7

*Reed,* 377 A.2d at 1021 (citation omitted).

In the matter before us, no evidence was presented that the guests of the tenant under the lease were legal occupants or residents of the Property and thus, part of the tenant's family. Rather, the record here clearly supports that guests were just that, simply *guests* of the tenant/family.

> Q  [Atty. Riegel] Now in your [package, the Luxury Stay, LLC Welcome to Pensyl Creek packet] you indicate that the – that Luxury Stay is not responsible for the guest's or their visitor's drunk and disorderly behavior. Correct.
>
> A  [Appellant Kleyman] Correct.
>
> …
>
> Q  Now in the package you have for tenants when they rent from you, you point out that it does say that [Appellants are] not responsible for the guest's drunk and disorderly behavior. Are there any other instructions in there about that kind of behavior?
>
> A  In—that kind of behavior or the other behavior in the assumption of risk?
>
> Q  Any other behavior in the assumption of risk, both.
>
> ...
>
> A  The assumption of risk is part of the lease.
> …
>
> Q  So, the …[a]ssumption of [r]isk, which is the last two pages of Exhibit A-7, is to be signed by the tenant.
>
> A  Yes.
>
> Q  …And the tenant is saying in Paragraph 5 [of the lease] – just briefly read Paragraph 5.

8

A "I also declare that neither I nor my guests and fellow occupants, if applicable, are under the influence of any chemicals substances…that may impair my mental faculties and sound judgment at the time of the signing of this release or at the time during my guests' and fellow occupants' stay at [the Property].

…

Q So...what you believe that says and what I'm hearing is that the tenant is saying they will not be drunk…while they are using your [P]roperty.

A Yeah, because if they were and they damaged themselves or they hurt someone else it should be on them not us.

…

(R.R. at 628a, 631a-634a.)

[Direct examination of neighboring homeowner of Property]

Q [Atty. Riegel] Any other items in [the Luxury Stay, LLC Welcome to Pensyl Creek packet of] materials that you wish to bring to the [B]oard's attention?
…

A [Leopold Zappler] May I read the full disclaimer?
…

A The concern that I have here is that no – it says within the disclaimer "Assuming—""At all times, guests or in the case of a person of 25 or over, assuming responsibility for the guest by signing this [lease] agreement, but not being present at the [P]roperty is responsible for all and every action of other guests and visitors in and around the [P]roperty."

…

Q Any other specific items from the Luxury Stay guest packet that cause you concern?

9

> A     Maximum Occupancy. It specifically says that you may, indeed, bring more than the occupancy limit although [Appellants] must approve it.

(R.R. at 628a, 631a-634a, 722a-724a.)

Also of relevance here, Appellants argue that the terms "transient lodging" and "transient tenancies" do not exist in the Ordinance and therefore, Appellees cannot improperly establish undefined permitted uses. *See Borough of Fleetwood v. Zoning Hearing Board of the Borough of Fleetwood*, 649 A.2d 651 (Pa. 1994) (wherein the Pennsylvania Supreme Court held that the letter of the zoning ordinance is not to be disregarded or ignored under the pretext of pursuing the spirit); *see also JALC Real Estate Corporation.*

Appellants assert the Enforcement Notice cited them for "[u]se of [the Property] as Hotel and/or other types of transient lodging, Rental of Single Family Residential Dwelling for transient tenancies." (R.R. at 257a.) Appellants argue that the Enforcement Notice improperly established certain uses but refers to terms for which there is no definition in the Ordinance.

Thomas J. Shepstone (Shepstone) testified for Appellants as an expert in the field of planning and zoning:

> Q    [Atty. Higgs]  Tom [Shepstone], now, you made the statement that you wouldn't have recommended the [Enforcement Notice] be sent. In your report there are a number of reasons you give for that position. Could you briefly go through them one at a time?
>
> A    [Shepstone] Right….I wouldn't have – I certainly wouldn't have drafted [the Enforcement Notice] that way, let's put it that way, because I don't believe that the basis is there for what is said.

For example, the [O]rdinance – the [E]nforcement [N]otice says, refers to "use of premises as a hotel and/or types of transient lodging and rental of single family dwellings for transient tenancies," and I would note…these terms are terms that are defined – some of them are defined in the [O]rdinance….there's a very specific definition of hotel. That hotel definition requires that you have 10 rooms that you rent – so, [the Property] clearly is not a hotel. That does not require a lawyer interpretation, that is – you know, we put those definitions in for a reason, so that somebody can refer to them and understand. A person coming into a township to do business is entitled to know what things mean and the definition of a hotel in one township may be different than another….

Likewise, there is no definition in the [O]rdinance for transient lodging. There is nothing that talks about, that defines transient tenancy, transient lodging. None of those things are defined nor is there a use called rental of single family dwelling for transient tenancy. That's a use that doesn't exist….to say that [the Property is] a hotel, when it clearly isn't, and to say that it's a use that's not even defined in the [O]rdinance…that's not a proper way to go about it.

Q   I notice in Paragraph B [of Shepstone Expert Report] you quote the [Ordinance] as saying, "A hotel is a building designed for use primarily as a temporary abiding place which lodging is provided for compensation with or without meals containing 10 or more guest rooms and having an outside common entrance."

A   That's correct.

Q   So, a hotel has to have an outside common entrance with a bunch of rooms off of it.

A   That's correct, and it does not exist, that's not what's [in the Ordinance], so it cannot be a hotel.

(R.R. at 380a-382a.)

11

Where a statute or ordinance defines a word or phrase, the court is bound thereby although such definitions may be different from ordinary usage. *Hughes v. School District of Pittsburgh*, 108 A.2d 698 (Pa. 1954). Zoning ordinances are presumptively constitutional and valid, but "[r]estrictions imposed by zoning ordinances are, however, in derogation of the common law and (at times) of the liberties, rights and privileges guaranteed by the Constitution of the United States and the Constitution of Pennsylvania and therefore must be strictly construed." *Medinger Appeal*, 104 A.2d 118, 120 (Pa. 1954). (Internal citations omitted.) As such, restrictions as to what a landowner may/may not do with his land must not be construed as to fetter the use of that land by implication. *Fidler v. Zoning Bd. of Adjustment of Upper Macungie Twp.*, 182 A.2d 692 (Pa. 1962). "The permissive widest use of the land is the rule and not the exception, unless specifically restrained in a valid and reasonable exercise of the police power." *Id.*

Appellants' further argument suggests that under Section 603.1 of the MPC, this permissiveness is likewise the rule unless specifically restrained in a valid and reasonable exercise of police power.

Section 603.1 of the MPC provides:

[i]n interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of the property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction.

Added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10603.1.

Where doubt exists, or when there is an ambiguity in the ordinance, "the language of a zoning ordinance should be interpreted in favor of the

12

landowner and against any implied extension of restrictions on the use of one's property." *Adams Outdoor Advertising, L.P. v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469, 484 (Pa. Cmwlth. 2006). Further, "zoning ordinances are to be liberally construed to allow the broadest possible use of land." *Ligo v. Slippery Rock Twp.*, 936 A.2d 1236, 1238 (Pa. Cmwlth. 2007); *see also Riverfront Development Group, LLC v. City of Harrisburg Zoning Hearing Board,* 109 A.3d 358 (Pa. Cmwlth. 2015). "The [zoning] Board has an obligation to construe the words of an ordinance as broadly as possible to give the landowner the benefit of the least restrictive use when interpreting its own zoning ordinance." *Id.* at 366.

A zoning board is not a legislative body, and it lacks authority to modify or amend the terms of a zoning ordinance. *Hill v. Zoning Hearing Board of Maxatawny Township,* 597 A.2d 1245, 1251 (Pa. Cmwlth. 1991). "[Z]oning boards...must not impose their concept of what the zoning ordinance should be, but rather their function is only to enforce the zoning ordinance in accordance with the applicable law." *Ludwig v. Zoning Hearing Board of Earl Township,* 658 A.2d 836, 838 (Pa. Cmwlth.1995) (quoting *Appeal of Kline,* 148 A.2d 915, 916 (Pa. 1959)). It is the legislative body of the city, town, borough, or township that possesses the authority to promulgate legislative acts of that governing body, and the promulgation of a zoning ordinance is just such a legislative act. *Ludwig*. Ergo, only the governing body may enact, modify, or amend the terms of a zoning ordinance.

The trial court's order stands in contrast to this Court's recent decisions in *Shvekh v. Zoning Hearing Board of Stroud Township*, 154 A.3d 408 (Pa. Cmwlth. 2017) and *Marchenko v. Zoning Hearing Board of Pocono Township*, 147 A.3d 947 (Pa. Cmwlth. 2016). In *Marchenko*, this Court held that a

13

property owner, who rented her property on a short-term basis in a residential district permitting single-family dwellings, did not violate the concept of a single-family residential district. In *Shvekh*, the owners rented out the property but occupied it approximately one week per month. Presently, Mr. Kleyman does not live at the Property at all. In fact, Mr. Kleyman lives over 100 miles from the Property in a different state. Unlike the property owners in *Shvekh* and *Marchenko*, the Property at issue is one of numerous properties owned by Appellants as part of a business enterprise and never occupied by Mr. Kleyman.[9]

While the facts in *Shvekh* and *Marchenko* are distinguishable because the owners occupied the homes a portion of the time, the controlling law is not. In *Marchenko*, the zoning ordinance did not prohibit the owner of a "single family dwelling" from renting it out. *Marchenko*, 147 A.3d at 950-51. In *Shvekh*, the zoning board sought to expand the definition of "tourist home" to include any short term rental, without any support in the language of the zoning ordinance. This Court held that a vacation rental of homeowner's single-family home did not meet the definition of an improper "tourist home" contained in the township's zoning ordinance. *Shvekh v. Zoning Hearing Bd. of Stroud Twp*., 154 A.3d at 408, 410-11, 413. Referencing *Marchenko*, we noted that occupation of the premises was an important but not controlling factor. *Id.* at 413. Enterprises such as AirBnB have expanded the possible uses of single-family dwellings and a township can address such uses in the zoning ordinance. *Id.* at 415. Amendments, however, "cannot be effected by shoe-horning a use that involves renting an entire single-family home to vacationers into the definition of 'tourist home.'" *Id.*

---

[9] (R.R. at 486a. *See also* R.R. at 483a, 555a.)

14

Consequently, the Board here was required to apply the terms of the Ordinance *as written*, rather than deviating from those terms based on unexpressed policies of the Township regarding permitted uses. The Board's function is only to enforce the zoning ordinance in accordance with the law. *Ludwig; see also Shvekh.* Appellants have proven that ambiguity exists in the language of the Ordinance. Because of that ambiguity, we are required to interpret the language of the Ordinance in favor of the landowner and against any implied extension of restrictions on the use of one's property. *Shvekh; Marchenko; Adams Outdoor Advertising, L.P.*

## C. Health, Safety & Welfare of the Public

The Trial Court also found that even if Appellants could establish their use of the Property as a legitimate business use, the Township satisfied its initial production burden and demonstrated a 'substantial relationship' between a ban on using single family dwellings for short-term transient tenancies and the health, safety, and welfare of the public. (Tr. Ct., Slip Op. 4/20/16 at 11.)

The Board identified three areas of issue regarding the Property as pertains to the health, safety and welfare of the public: occupancy limit (in relation to number of bedrooms), the septic system, and disruptive tenant actions.

The Trial Court indicated that the Board's decision notes that "the Property includes the placement of mattresses and/or sleep sofas [in areas] not typically used for bedroom use." *Id.* at 10. The Court further noted that Appellant Kleyman testified he has not tested the septic system to determine if it has the capacity to accommodate the sewage and waste water use generated by multiple occupants of the property. *Id.* at 11.

15

Testimony by Appellant Kleyman on cross-examination at one point identifies that the Property has six bedrooms and sleeps 12, while current advertising states that the Property "sleeps 17." (R.R. at 521a-523a.) Upon recross-examination Appellant Kleyman testified that the Property has three bedrooms but the Property sleeps "twelve to 14." *Id.* at 622a-623a. When questioned about any failure of the septic system at the Property, Appellant Kleyman testified there was never a failure of the septic system. *Id.* at 629a.

Regarding septic systems, testimony by the Zoning Officer indicates that a township property has a septic permit for a septic system of a size to accommodate the number of bedrooms at the property. (R.R. 671a.) The Zoning Officer also testified that if a property owner were to add an additional bedroom, but failed to obtain a permit for a septic system to accommodate the additional bedroom "they would be in violation and if [the Zoning Officer] were to become aware of it he would…write a citation or an enforcement notice…." *Id.* at 672a. The Zoning Officer also testified that the Township has never issued a citation or enforcement notice for a visual violation pertaining to the number of bedrooms at a property in relation to the size of the septic system permit issued. *Id.*

The Zoning Officer also testified that he has, however, used his sensory perceptions (visual and smell) to identify septic system issues and as a result, issued an "automatic notice from my office that [a property owner is] in violation of the zoning ordinance…because that's the only way [violation notices are] going to happen…." *Id.* at 673a. However, the Zoning Officer also testified that a violation has never occurred with the Property in issue. *Id.* at 674a.

Appellees identify that while the Property "has many of the trappings" of a hotel or motel type use, there is no on-site supervision or direct control or

16

observation of any sort of the occupants. (Appellees' Br. at 13.) Appellees assert that short-term occupancy of the Property does not engender a sense of community, shared commitment to the common good of the community, level of stability and permanence, or other characteristics identified as inherent in a single-family residential district. *See id.* at 14.

In support, the adjoining neighbor of the Property[10] testified before the Board that his experience with the individuals on the Property as:

> [V]ery loud music, people screaming, often obscenities, people running in various states of undress back and forth. My daughter's bedroom faces the direction of that house [on the Property] and during weekends when that house is leased, my daughter needs to sleep elsewhere because it is simply too loud for her to even contemplate sleeping in any way. Fireworks, bonfire.

(R.R. at 713a-714a.)

Appellants, however, assert the Trial Court erred in finding "[t]here is an identified, protected public interest at issue: the health, safety, and welfare of the public. There is a substantial relationship between this identified, protected public interest and a ban on using single family dwellings for short-term transient tenancies."[11]

On the issue of tenant actions, Appellants argue there is nothing about their use of the Property for short-term rentals that necessarily violates or endangers the health, safety, and welfare of the public "anymore than the same

---

[10] The adjoining property to the Property in issue is separated by a right-of-way.

[11] (Tr. Ct., Slip Op. 4/20/16 at 10.)

17

occurrences cited by the [Trial Court] occurring at an owner occupied single-family residence rented for a long-term such as one year."[12] *See Exton Quarries, Inc. v. Zoning Bd. of Adjustment of W. Whiteland Twp.*, 228 A.2d 169, 181 (Pa. 1967).

> In light of our previous discussion of traffic, dust and vibration, we believe that the consultant's testimony consisted in reality of no more than a series of epithets based solidly on only one objection relevant to West Whiteland Township as a whole-that this quarry was unaesthetic and conflicted with his projected plans. Such an objection, as this Court has stated, is not sufficient in and of itself to sustain the constitutionality of a zoning restriction on the use of private property.

*Exton Quarries, Inc.*, 228 A.2d at 181.

Appellants assert the alleged problems the Township sought to address through enforcement of the Ordinance ("noise and other disturbances") are not problems appropriately addressed through enforcement of the Ordinance. Rather, they argue these are issues which occur in all zoning districts distinct from the regulation of particular uses of the property. Appellants assert "these problems"[13] can occur anywhere people gather, whether it is at a home, business, tourist attraction, industrial facility or other places. (Appellants' Br. at 65-66.)

Consequently, Appellants argue that the Township must address issues of this nature by "clear and unambiguous general municipal ordinances

---

[12] (Appellants' Br. at 65.)

[13] The problems as identified in the Trial Court's opinion include the placement of mattresses and/or sleep sofas not typically utilized for bedroom use; lack of testing of the septic system to determine whether it has the capacity to accommodate the sewage and wastewater use generated by multiple occupancies; and testimony regarding loud and boisterous activity with fireworks, obvious signs of public intoxication, public urination, loud noise, loud music, and lewd conduct on a regular basis. (Tr. Ct. Slip Op., 4/20/16 at 11-12; *see also* R.R. at 690a.)

enacted pursuant to the general police power of [municipalities] and not through zoning ordinances." *Id.* at 66.

As the court in *Exton Quarries, Inc.* noted on the issue of public health, safety, and welfare as applicable to deprivation of the use of property via zoning:

> Zoning ordinances are valid whenever 'they are necessary for the preservation of public health, safety, morals or general welfare,' but 'the power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety, and general welfare.' Moreover, it should be borne in mind that although '(z)oning is a means by which a governmental body can plan for the future-it may not be used as a means to deny the future' and that courts must determine 'the reasonableness of the regulation as it applies to conditions [n]ow existent.' (Internal citations omitted.)

*Exton Quarries, Inc.*, 228 A.2d at 178-179.

Here, the Trial Court held that the Board demonstrated a substantial relationship between a ban on using single family dwellings for short-term transient tenancies and the health, safety, and welfare of the public. Our scope of review when no additional evidence is taken following the determination of a zoning hearing board, is limited to determining whether the Board committed a manifest abuse of discretion or an error of law. *Cottone*. We may conclude that the Board abused its discretion only if its findings are not supported by substantial evidence. *Coal Gas Recovery, L.P.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* If the record indicates that the findings are supported by substantial evidence, we may not disturb the Board's findings. *Boundary Drive Assoc. v. Shrewsbury Township*

19

*Board of Supervisors,* 491 A.2d 86 (Pa. 1985). The Board, when presenting evidence, must "raise specific issues concerning the proposal's general detrimental effect on the community before the applicant is required to persuade the fact finder that the use would not violate the health, safety and welfare of the community." *Appeal of R.C. Maxwell Co.,* 548 A.2d 1300, 1303 (Pa. Cmwlth. 1988); *see also Tuckfelt v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 471 A.2d 1311 (Pa. Cmwlth. 1984).

Here, the Board did not meet its burden when it speculated as to possible harm by the actions of Appellants' tenants and their guests, since that burden requires "a high degree of probability that [the alleged actions] will [substantially] affect the health and safety of the community." *Appeal of O'Hara,* 131 A.2d 587, 596 (Pa. 1957); *Tuckfelt*.

Although conflicting testimony exists as to the number of bedrooms at the Property, the record is devoid of evidence of any violation pertaining to occupancy at the Property. The record identifies there was never a septic system problem or violation at the Property. Regarding the actions of tenants and their guests at the Property, the adjoining neighbor testified he witnessed improper and indecent conduct emanating from some guests. (*See* R.R. at 713a-714a.) The adjoining neighbor also testified the Pennsylvania State Police (PSP) were called in November 2013. However, when questioned as to what actions the PSP took in response to the calls around that time, the adjoining neighbor testified that "[t]he [PSP] felt that because the [T]ownship had not, as yet, determined there to be a violation that they would prefer to attend to these issues subsequent to a[n Enforcement Notice] decision made by the [T]ownship." *Id.* at 695a-696a. Although the PSP came to the Property on at least five separate occasions after the

20

Township gave Appellants the Enforcement Notice, examination of the PSP reports evidence that citations were not issued by the PSP for any of the reported activities taking place on the Property. (*See* Certified Record, Township Exhibit #4 at pp. 5, 7, 9, 11, 13.)

Another resident of the Township also testified with regard to the Property that "[t]hese are some really bad neighbors." *Id.* at 727a. Yet, that resident went on to testify:

> Unfortunately, this can also happen with any neighbor. If somebody moves in and rents the house out to somebody else, the exact kind of thing can happen. In fact, they do all the time. *I'm concerned about it happening with my next door neighbor….[My neighbor] could do the exact same things and my only recourse would be – I have no recourse, basically, because we don't have any ordinances here [in the Township] that address the kind of things that they're dealing with.*
> …
>
> [W]hen there is a property issue the approach within Pennsylvania…is to find in favor of the property owner. When there is uncertainty in wording or meaning or interpretation it's to find for the property owner unless it can be proved otherwise. And basically, to try to find some sort of little twist or reinterpretation…just to enforce a rule and limit somebody's use of their property not only is – speaks to the way we're supposed to be interpreting the law is incorrect, but also from an ethical perspective.
> …
>
> If our [B]oard decides they want to find…this unusual way to interpret our zoning to disapprove this use [of the Property,] it's like using a screwdriver on nails. It'll work, but it destroys the screwdriver and every time we bend the rules to make them do something they're not supposed to do we damage the rule itself and we lose respect for the rule….

*Id.* at 728a-730a. (Emphasis added.)

21

Upon review, we conclude that the Trial Court's findings are not supported by substantial competent evidence. The Township did not show a high probability that the use of the Property will generate actions not normally generated by this type of use and that the use posed a substantial threat to the health and safety of the community. *Appeal of O'Hara*; *Tuckfelt.*

There is no specific indication Appellants violated any occupancy limits under the Ordinance; nor were they cited for any septic system violations. While loud music, use of obscenities, people screaming and running in various states of undress may not be the type of conduct one would expect nor want from a neighbor, absent anything more, these actions do not rise to the level of a substantial threat to the health and safety of the community. Further, we find that the testimony, although indicative of extremely disrespectful tenants inuring to a disrespectful landlord, did not establish a high degree of probability of specific detrimental consequence to the public welfare. *Appeal of O'Hara.* This is not to excuse Appellants. The conduct described is certainly subject to redress in any number of ways, and one would expect law enforcement to be vigilant in responding to neighbors' complaints. Likewise, there is nothing to constrain the Township from enacting amendments to the Ordinance which would protect property owners' constitutional rights while providing the specific definitional guidelines where they are now lacking. Yet as currently enacted, the Ordinance cannot be interpreted in a manner the Trial Court suggests nor as the Board found.

We do not agree there was a substantial relationship between using the Property for short-term tenancies and the health, safety, and welfare of the public. Substantial evidence does not exist to support the Board's findings.

# IV. Conclusion

In sum, the Township's interpretation of the Ordinance, as currently written, is counter to the purpose of the Ordinance "as established in accordance with the objectives of [Section 603.1] of the MPC." (R.R. at 31a.) Those objectives of Section 603.1 of the MPC interpret the language of zoning ordinances in favor of the property owner and against any implied extension of the restriction, *where doubt exists as to the intended meaning of the language written.* 53 P.S. §10603.1; *Borough of Fleetwood*; *Fidler*; *Appeal of O'Hara*; *Adams Outdoor Advertising, L.P.*

The current language of the Ordinance does not specifically bar Appellants' use of the Property. To use the current language of the Ordinance, to prevent use of the Property as a rental property, places doubt in the mind of this Court as to the intended meaning of the Ordinance. Such an interpretation would, indeed, be analogous to using a screwdriver on nails.

Accordingly, we reverse.


_____
JOSEPH M. COSGROVE, Judge

23

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Slice of Life, LLC and : 
Val Kleyman, : 
              Appellants : 
           : 
         v. : 
           : 
Hamilton Township Zoning Hearing :    No. 941 C.D. 2016
Board and Hamilton Township : 

## O R D E R

AND NOW, this 21st day of June, 2017, the order of the Court of Common Pleas of Monroe County is REVERSED.

_____
JOSEPH M. COSGROVE, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Slice of Life, LLC and : 
Val Kleyman, : 
              Appellants : 
               : 
          v. :   No.  941 C.D. 2016
               :   Argued:  April 20, 2017
Hamilton Township Zoning Hearing : 
Board and Hamilton Township : 


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE JOSEPH M. COSGROVE, Judge (P)
              HONORABLE JAMES GARDNER COLINS, Senior Judge


**DISSENTING OPINION BY**
**SENIOR JUDGE COLINS**                     **FILED:  June 21, 2017**


I respectfully dissent from the well-written, scholarly opinion of the majority.

However, I feel that all of the evidence of record supports the trial court's affirmance of the Board's decision that appellants are using the property, not as a single-family dwelling, but rather are conducting a short-term transient lodging business. No doubt can exist that the intended meaning of the ordinance was not to allow the property to be used as a short-term rental unit for multiple families and/or individuals. Transient short-term rentals for multiple families or groups were not included within the drafters' intentions when restricting the zoning use to that of single-family properties.


                                        _____
                                    **JAMES GARDNER COLINS, Senior Judge**