# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cheri Ann Leinberger, Matthew S.  :
Leinberger, Daniel P. Seneca, Kathleen  :
A. Seneca and William J. Necker,  :
                 Appellants  :
                               :   No. 1620 C.D. 2017
          v.                       :   Argued: September 18, 2018
                               :
Anthony G. Stellar, as Trustee of the  :
Deborah E. Stellar Revocable Trust  :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ROBERT SIMPSON, Judge (P)
                HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**               **FILED: October 11, 2018**

       In this appeal, Neighbors[1] ask whether the Court of Common Pleas of Lehigh County[2] (trial court) erred in granting, in part, the post-trial motions filed by Anthony G. Stellar, Trustee of the Deborah E. Stellar Revocable Trust (Landowner), following a non-jury trial on Neighbors' zoning enforcement action under Section 617 of the Pennsylvania Municipalities Planning Code[3] (MPC). Through their enforcement action, Neighbors sought to enjoin Landowner from utilizing a cabin on his property for short-term rentals. Relying on this Court's recent precedent, the trial court ultimately determined that the Lynn Township Zoning Ordinance of 1982

---

      [1] Neighbors are Cheri Ann Leinberger, Matthew S. Leinberger, Daniel P. Seneca, Kathleen A. Seneca, and William J. Necker.

      [2] Judge J. Brian Johnson presided.

      [3] Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §10617.

(zoning ordinance) did not prohibit short-term rental use; thus, it declined to enjoin Landowner from renting his property on a short-term basis. Upon review, we affirm.

## I. Background

Landowner owns a 48.1-acre property located at 7963 Springhouse Road, New Tripoli, Lynn Township (Township), Pennsylvania (subject property). A portion of the subject property lies within the Township's Blue Mountain Preservation (BMP) zoning district and a portion of the subject property lies within the Township's Agriculture Preservation (AP) zoning district. Both of these districts permit a limited number of uses, including single-family detached dwellings. The subject property is improved with a single-family detached dwelling, a cabin. The dwelling on the subject property is rented to members of the public approximately 30% of the year and is used by or available for use by Landowner's family for the remaining 70% of the year. Neighbors own homes near the subject property.

In December 2015, Neighbors filed a two-count complaint against Landowner in the trial court. In Count I, relying on the private enforcement provision in Section 617 of the MPC, Neighbors sought to enjoin Landowner's use of his property in a manner that violated the zoning ordinance. Specifically, Neighbors alleged Landowner used the dwelling on the subject property for short-term rentals, including advertising on the internet for short-term rentals for vacations and getaways. Neighbors averred this use did not qualify as a permitted use in the zoning districts in which the subject property lies. Through Count II of the complaint, Neighbors stated a cause of action for private nuisance. Neighbors' suit proceeded to a two-day non-jury trial in February 2017.

2

After trial, the trial court issued a decision in which it enjoined Landowner from using the dwelling on the subject property for short-term rentals. In so doing, it found that the dwelling on the subject property is advertised on the internet for short-term rentals for parties, vacations and, generally, for getaways. Since at least 2010, Landowner rented the dwelling on the subject property for short-term rentals. Guests rent the dwelling on the subject property for various lengths of time, anywhere from one night to a few weeks. Additionally, Landowner's family occasionally reserves the dwelling on the subject property for personal events throughout the year. The dwelling on the subject property is also used for impromptu visits by Landowner's family and friends on days it is not previously reserved for renters or a family event for Landowner.

Ultimately, the trial court concluded Landowner's short-term rentals violated the zoning ordinance as the use of the dwelling on the subject property did not satisfy the definition of a "single-family detached dwelling as set forth in the [zoning] [o]rdinance." Tr. Ct., Slip Op., 6/7/17, at 22. In particular, the trial court first explained:

> [Neighbors] allege a violation of Section 925 [of the zoning ordinance[4]]. However, they do not appear to challenge the components of this section specifically. That is, they do not argue that the building located on the [subject property] is not a structure designed to be occupied as a single housekeeping unit. Notwithstanding this lack of challenge, we will analyze this question. The evidence establishes that there is one building located on the [subject property], that there are not multiple housekeeping units in the building, that it is not an apartment or condominium building, and that it is a

---

[4] Section 925 of the zoning ordinance defines "dwelling unit" as: "Any structure, or part thereof, designed to be occupied as living quarters as a single housekeeping unit." Id.

structure designed to be occupied as a single housekeeping unit. The evidence clearly establishes that the only building located on the [subject property] is a dwelling unit that meets the definition of Section 925 [of the zoning ordinance].

[Neighbors] allege a violation of Section 925.3 [of the zoning ordinance[5]]. However, they do not appear to challenge all of the components of this section. They do not argue that the building located on the [subject property] is not a dwelling unit on a permanent foundation … or that it is not designed and constructed as a residence for one (1) family, which does not have a vertical wall in common with any other building. The only component of this section that [Neighbors] appear to challenge is the use of the word 'family.' They argue that the definition of the word 'family' in Section 926 of the [zoning] [o]rdinance[6] and as it is used in Section 925.3 [of the zoning ordinance] precludes the use of the [dwelling on the subject property] for short term rentals.

In light of these definitions, whether the [dwelling on the subject property] qualifies as a 'single[-]family detached dwelling' ultimately turns on the meaning of 'family.' That is, only if the residents of the [dwelling on the subject property] are a 'family' for purposes of the [zoning] [o]rdinance can the [dwelling on the subject property] qualify as a 'single[-]family detached dwelling' and thereby continue to allow short-term rentals.

The evidence demonstrates that, whether the people using it are the family and friends of [Landowner], or are strangers that pay rent, the [dwelling on the subject property] is used by individuals who live independently

---

[5] Section 925.3 of the zoning ordinance defines "Dwelling unit – single[-]family detached," in relevant part as "[a] dwelling unit on a permanent foundation … designed and occupied as a residence for one (1) family …." Id.

[6] Section 926 of the zoning ordinance defines "family" as: "One or more individuals living independently as a single housekeeping unit and using cooking facilities and certain rooms in common. A FAMILY [sic] shall not be deemed to include the occupants of a college dormitory or residential club." Id.

4

as a single housekeeping unit and use cooking facilities and certain rooms in common. This appears to be due to the fact that the people who use the [dwelling on the subject property] do so as a group and the fact that the structure and characteristics of the building do not provide for separate living quarters. Thus, the people who use the [dwelling on the subject property] meet the definition of 'family' under the [zoning] [o]rdinance.

Id. at 14-15.

However, the trial court determined, based on its review of the Supreme Court's decisions in Albert v. Zoning Hearing Board of North Abington Township, 854 A.2d 401 (Pa. 2004) and Appeal of Miller, 515 A.2d 904 (Pa. 1986) and this Court's decision in Marchenko v. Zoning Hearing Board of Pocono Township, 147 A.3d 947 (Pa. Cmwlth. 2016), the meaning of the word "family" in the context of a zoning ordinance necessarily includes components of stability and permanency.

Here, the trial court stated, "[w]hile the groups of people who use [the dwelling on the subject property] periodically, whether they are the family of [Landowner] or renters, appear to function as a group or family, they are transient – there is no permanency to their residing [i]n the [dwelling on the subject property]." Tr. Ct., Slip Op., 6/7/17, at 22. The trial court determined that this level of instability and transience was incompatible with the single-family concept. Additionally, the trial court noted, to the extent Landowner rents the dwelling on the subject property to third parties on a short-term basis, it was clear that a profit motive was the basis for that use, which is inconsistent with single-family dwelling use. However, the trial court noted, to the extent Landowner's family uses the dwelling on the subject property, profit motive is not at issue. For all of these reasons, the trial court

5

determined Landowner's use of the dwelling on the subject property did not meet the zoning ordinance's definition of a "single[-]family detached dwelling." Id.

In addition, the trial court found in favor of Neighbors on their nuisance claim;[7] as a result, it set forth detailed parameters for activities at the dwelling on the subject property. Landowner filed post-trial motions.

The trial court subsequently issued an opinion on post-trial motions in which it reversed its trial holding on the short-term rental issue. In particular, relying primarily on Shvekh v. Zoning Hearing Board of Stroud Township, 154 A.3d 408 (Pa. Cmwlth. 2017) (where zoning ordinance did not prohibit use of single-family dwelling for short-term vacation rentals, zoning board erred in upholding enforcement notice against landowner; use was not a "tourist home" under relevant ordinance definition), the trial court determined Landowner's use of the subject property was not prohibited by the zoning ordinance.

More specifically, the trial court determined, the zoning ordinance contained no prohibition on short-term rentals. The trial court further determined the subject property met the definitions of "single[-]family detached dwelling" in Section 925.3 of the zoning ordinance and "dwelling unit" in Section 925 of the zoning ordinance. Additionally, the trial court determined the individuals who stay at the subject property met the definition of "family" in Section 926 of the zoning ordinance. The trial court noted that the fact that the owner of the subject property never lives on the subject property because the owner is a trust rather than an

---

[7] To that end, the trial court found that individuals using the subject property caused significant noise, including firing weapons, setting off fireworks, and playing loud music.

individual was an important factor, but not the controlling factor. Thus, the trial court concluded the use of the subject property for short-term rentals was consistent with the zoning ordinance. As a result, the trial court granted Landowner's post-trial motion, in part, concluding Landowner was not enjoined from allowing anyone to use the subject property for short-term rentals, whether paid or unpaid. Additionally, the trial court denied Landowner's post-trial motions relating to the trial court's disposition of Neighbors' nuisance claim. Neighbors appealed to this Court.[8]

## II. Issue

On appeal,[9] Neighbors assert the trial court erred in reversing its initial holding that Landowner's use of his rural, single-family residentially-zoned property, as a for-profit business venture involving short-term transient rentals, violated the zoning ordinance.

## III. Discussion
## A. Contentions

Neighbors first argue the subject property is located in a rural area of the Township, at the base of the Blue Mountain, overlapping two zoning districts, the BMP district and the AP district. Neighbors assert that, among the limited uses permitted in those districts, the only one that could possibly apply to Landowner's use of the subject property is a single-family dwelling use.

---

[8] Landowner did not cross-appeal from that part of the trial court's order that denied his post-trial motions.

[9] Our review of a trial court's decision denying a request for equitable relief is limited to considering whether the trial court erred as a matter of law or abused its discretion. Woodward Twp. v. Zerbe, 6 A.3d 651 (Pa. Cmwlth. 2010) (en banc).

7

Further, Neighbors contend, under the zoning ordinance's definitions of "single-family detached dwelling," "dwelling unit," and "family," the individuals using the subject property must qualify as "one or more individuals living independently as a single housekeeping unit and using cooking facilities and certain rooms in common. …" Section 926 of the zoning ordinance. Neighbors maintain this definition cannot be met as a matter of law here in light of the transient, for-profit nature of the occupancies of the subject property, because those occupancies cannot qualify as a "single housekeeping unit" under Albert. See Reproduced Record (R.R.) at 177a-201a (Table of Rental Agreements from October 2010 through June 2016, showing significant rental amounts received from renters procured through several brokers, for what were largely three or four day rentals).

Further, Neighbors argue, this Court's post-Albert decisions in Slice of Life, LLC v. Hamilton Township Zoning Hearing Board, 164 A.3d 633 (Pa. Cmwlth. 2017), appeal granted, 180 A.3d 367 (Pa. 2018), Shvekh, Marchenko, and Reihner v. City of Scranton Zoning Hearing Board, 176 A.3d 396 (Pa. Cmwlth. 2017), are either factually distinguishable, or, as in the case of Slice of Life, may be reversed on appeal by the Supreme Court.

Neighbors assert the issue before this Court is controlled by Albert. They direct this Court's attention to what they contend are the following undisputed facts. First, the BMP and AP districts only allow a limited number of uses, none of which include operation of a short-term rental business for vacations or weekend getaways. Neighbors do not argue that Landowner is prohibited from renting the subject property as a single-family residence. Rather, they assert, leasing the subject

8

property under several-day long booking agreements, to unrelated strangers, does not qualify as a single-family residential use, either in the legal or practical sense of the phrase.

To that end, Neighbors contend, a "single[-]family detached dwelling" is defined in Section 925.3 of the zoning ordinance as: "A dwelling unit on a permanent foundation … designed and constructed as a residence for one (1) family, which does not have a vertical wall in common with any other building." Appellants' Br. at 13. Neighbors further maintain Section 925 of the zoning ordinance defines a "dwelling unit" as: "Any structure, or part thereof, designed to be occupied as living quarters as a single housekeeping unit." Id. They also argue Section 926 of the zoning ordinance defines "family" as "one or more individuals living independently as a single housekeeping unit and using cooking facilities and certain rooms in common. A FAMILY [sic] shall not be deemed to include the occupants of a college dormitory or residential club." Id.

Here, Neighbors assert, Landowner has not used the subject property "as a residence for one (1) family," as required to meet the definition of a "single[-]family detached dwelling" under Section 925.3 of the zoning ordinance. Instead, they contend, since at least 2010, Landowner used the subject property for vacation rentals, involving a mix of temporary users whose actual residence is located elsewhere. Neighbors contend it is inconceivable that any of these vacation renters are moving furniture, clothing or other belongings into the subject property when they come there to visit; nor are they "living independently as a single housekeeping unit"—as required to meet the definition of "family" in Section 926

9

of the zoning ordinance—"when these transient, short-term occupants come and go as they please." Appellants' Br. at 14.

Neighbors further argue that in Albert, a zoning officer initially concluded that the proposed group home at issue in that case did not qualify as a "single-family detached dwelling" under the ordinance. Id. at 402. The zoning board reversed, holding the facility qualified as a "single-family detached dwelling." The common pleas court affirmed. On further appeal, this Court affirmed.

Neighbors assert the issue before the Supreme Court was whether "the Commonwealth Court erred by applying an over-inclusive definition of 'family' in concluding that the [group home] qualifies as a 'single-family detached dwelling' under the [o]rdinance." Id. at 404. In reversing this Court's decision, Neighbors contend, the Supreme Court—even after acknowledging that zoning ordinances are to be liberally construed and interpreted broadly to permit a landowner the broadest use of his land—still concluded the zoning board erred in allowing the challenged use. Neighbors assert it is clear from Albert that a profit motive, which exists here, is incompatible with the single-family concept. Perhaps more importantly, Neighbors contend, in order for a "family" to exist, which is an obvious predicate to a "single-family residential use," there must be a degree of stability of the residents, which is directly inconsistent with the facts established at trial here, including a chart showing the list of rentals for almost six years. R.R. at 176a-201a. Indeed, Neighbors maintain, given that the transient occupants of the subject property do not qualify as a "family," and the clear profit motive, the use of the subject property

10

cannot qualify as a single-family dwelling under the zoning ordinance as a matter of law.

## B. Analysis

"Where a statute or ordinance defines a word or phrase, the court is bound thereby although such definitions may be different from ordinary usage." Slice of Life, 164 A.3d at 640 (citing Hughes v. Sch. Dist. of Pittsburgh, 108 A.2d 698 (Pa. 1954)). Zoning ordinances are presumptively constitutional and valid. Tri-County Landfill, Inc. v. Pine Twp. Zoning Hearing Bd., 83 A.3d 488 (Pa. Cmwlth. 2014). "However, because restrictions imposed by zoning ordinances are in derogation of a landowner's property rights, they must be strictly construed." Newtown Square East, L.P. v. Twp. of Newtown, 101 A.3d 37, 51 (Pa. 2014) (citation omitted).

"[G]enerally[,] a zoning ordinance should be construed in a manner that does not, by mere implication, fetter a landowner's reasonable use of his land." Hess v. Warwick Twp. Zoning Hearing Bd., 977 A.2d 1216, 1221 (Pa. Cmwlth. 2009). "The permissive widest use of the land is the rule and not the exception, unless specifically restrained in a valid and reasonable exercise of the police power." Fidler v. Zoning Bd. of Adjustment of U. Macungie Twp., 182 A.2d 692, 695 (Pa. 1962).

Consistent with these principles, Section 603.1 of the MPC states:

> In interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of the property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the

11

property owner and against any implied extension of the restriction.[10]

Thus, where doubt exists, or when there is an ambiguity in the ordinance, "the language of a zoning ordinance should be interpreted in favor of the landowner and against any implied extension of restrictions on the use of one's property." Adams Outdoor Advert., L.P. v. Zoning Hearing Bd. of Smithfield Twp., 909 A.2d 469, 484 (Pa. Cmwlth. 2006). As a result, "zoning ordinances are to be liberally construed to allow the broadest possible use of land." Ligo v. Slippery Rock Twp., 936 A.2d 1236, 1238 (Pa. Cmwlth. 2007); see also Riverfront Dev. Grp., LLC v. City of Harrisburg Zoning Hearing Bd., 109 A.3d 358 (Pa. Cmwlth. 2015).

Mindful of these principles, we consider the relevant provisions of the zoning ordinance. As noted above, the subject property lies in the Township's BMP and AP zoning districts, both of which permit a "single[-]family detached dwelling." Sections 332.6, 342.11 of the zoning ordinance. The zoning ordinance defines a "dwelling unit" as: "Any structure, or part thereof, designed to be occupied as living quarters as a single housekeeping unit." Section 925 of the zoning ordinance (emphasis added). It also defines "Dwelling unit – single family detached," in relevant part as "[a] dwelling unit on a permanent foundation … designed and occupied as a residence for one (1) family …." Section 925.3 of the zoning ordinance. In turn, the zoning ordinance defines "family" as: "One or more individuals living independently as a single housekeeping unit and using cooking facilities and certain rooms in common. A FAMILY [sic] shall not be deemed to include the occupants of a college dormitory or residential club." Section 926 of the zoning ordinance.

---

[10] Section 603.1 was added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10603.1.

12

Construing and applying these provisions here, the trial court ultimately explained:

> First, there is no prohibition against renting in the [zoning] [o]rdinance. The [zoning] [o]rdinance further explains what uses are permitted on the [subject property]. The use at issue in our case is whether the [dwelling on the subject property] qualifies as a single[-] family detached dwelling.
>
> A 'single[-]family detached dwelling' is defined in Section 925.3 of the [zoning [o]rdinance[.] … The [dwelling on the subject property] meets this definition.
>
> A 'dwelling unit' is defined in Section 925 of the [zoning] [o]rdinance[.] … The [dwelling on the subject property] meets this definition.
>
> 'Family'[4] is defined in Section 926 of the [zoning] [o]rdinance[.] … Although less clear, the individuals staying at the [subject property] appear to fit this broad definition of 'family.' The fact that the owner of the [dwelling on the subject property] never lives [i]n the [dwelling on the subject property], since the owner is a trust rather than an individual, is an important factor but is not the controlling factor.
>
> As explained by the Pennsylvania Commonwealth Court in <u>Shvekh</u>, this Court must broadly interpret the [zoning] [o]rdinance and not strain to disallow the rental activity. …
>
> There is no prohibition against short term rentals in the [zoning] [o]rdinance. The [subject property] meets the definitions of 'single[-]family detached dwelling' set forth in Section 925.3 of the [zoning] [o]rdinance and the definition of 'dwelling unit' set forth in Section 925 of the [zoning] [o]rdinance. The individuals who stay at the [subject property] meet the definition of 'family' set forth in Section 926 of the [zoning] [o]rdinance. Thus, the use

13

of the [subject property] for short term rentals is consistent with the [zoning] [o]rdinance.

> [4] In [Albert], the Court was required to determine the meaning of the term 'family' because that term was not defined in the ordinance and the question of whether the property qualified as a single-family detached dwelling ultimately turned on the meaning of 'family.'

Tr. Ct., Slip Op., 10/12/17, at 7-9. We discern no error in the trial court's analysis.

More particularly, the dwelling on the subject property meets the zoning ordinance's definition of a "dwelling unit" because it is a structure *designed to be occupied* as living quarters as a single housekeeping unit. Section 925 of the zoning ordinance. The structure at issue here, which is approximately 3,000 square feet and is "set up as a luxury vacation home[,]" is designed to be occupied as living quarters as a single housekeeping unit. R.R. at 465a, 467a. To that end,

> [t]he house itself is a contemporary set-up. There's [sic] three bedrooms and two full baths on the main living floor as well as the kitchen and family space. There's a loft area with one room overlooking the great room and there's a finished walk-out lower level with other rooms for a full bathroom and other, you know, open-type areas for anything.

R.R. at 467a.

Nevertheless, Neighbors disagree that the dwelling meets the definition of "Dwelling unit – single[-]family detached," which is defined as a dwelling unit on a permanent foundation designed and occupied as a residence for one family. Section 925.3 of the zoning ordinance. They assert the dwelling is not designed and

14

occupied as a residence for *one family* because of the transient, for-profit nature of the short-term rentals.

Contrary to Neighbors' assertions, the zoning ordinance broadly defines "family" as one or more individuals living independently as a single housekeeping unit and using cooking facilities and certain rooms in common. Section 926 of the zoning ordinance. Here, Landowner rents the *entire* dwelling on the subject property to third parties 30% of the year with a maximum of eight occupants, and Landowner's family uses the dwelling on the subject property for "some portion of the remaining 70% of the year." Tr. Ct., Slip Op., 6/7/17, at 21; R.R. at 473a-76a.

In four decisions rendered over the last two years, this Court permitted short-term rentals of single-family dwellings in the absence of specific language in the zoning ordinances at issue prohibiting that activity. Indeed, "this Court has ruled in several recent decisions that a zoning hearing board misconstrued the terms of its zoning ordinance to prohibit property owners from using online platforms to offer their homes as vacation or short-term rentals." Reihner, 176 A.3d at 401. Thus, the trial court here correctly determined that, because the zoning ordinance does not prohibit Landowner's short-term rentals of the single-family dwelling on the subject property, such use is permissible. A review of this Court's recent decisions in zoning cases involving short-term rentals is helpful.

First, in Marchenko, the homeowner owned a single-family dwelling in a low-density residential zoning district. The township's zoning officer issued the

homeowner a notice of violation, indicating she was using the dwelling for commercial purposes, *i.e.*, vacation rentals, in violation of the zoning ordinance. The homeowner appealed to the zoning hearing board (ZHB). Before the ZHB, the homeowner testified she considered the dwelling her primary residence because she received mail there, did not own other property, and listed the dwelling's address on her driver's license. The homeowner explained she typically rented the dwelling on weekends, when she worked and stayed with a friend out-of-state. In the first 185 days the homeowner owned the dwelling, she resided at the property for 114 days (62% of the time) and rented it by listing it on the internet for 71 days (38% of the time).

The ZHB denied the homeowner's appeal of the violation notice. It noted that, although the zoning ordinance defined the term single-family dwelling, neither that term nor any specifically-defined term in the ordinance addressed the short-term rental of single-family dwellings to a series of different families, where only one family lived at the dwelling during a rental period. The ZHB determined the homeowner's rental activity constituted a lodge use, which was not permitted in the low-density residential district. The common pleas court affirmed, concluding the ZHB did not err in declining to interpret the term single-family dwelling to include successive, short-term occupancies by different families. It stated that the Supreme Court's decision in Albert established a policy against transient uses in districts zoned for single-family dwellings. The common pleas court also agreed that the homeowner's use of the dwelling constituted a prohibited lodge use. On further appeal, this Court reversed, stating:

> First, [the homeowner] argues that the ZHB erred in
> concluding that her short-term rentals of the [p]roperty are

16

prohibited in the [low-density residential] [d]istrict and not consistent with the single-family dwelling use. We agree.

…

Here, [the homeowner] uses the [p]roperty as her primary residence, resides at the [p]roperty a majority of the time, and is the only family occupying the [p]roperty when she resides there. Thus, the composition of the family living at the [p]roperty is not purely transient, and the [p]roperty is primarily used as a single-family dwelling by [the homeowner]. The ZHB did not address [the homeowner's] personal use of the [p]roperty, concluding only that [the homeowner's] rental activity, wherein only one family occupies the [p]roperty at a time, is prohibited in the [low-density residential] [d]istrict. However, the [zoning] [o]rdinance's definition of 'single-family dwelling' does not prohibit this type of rental activity, nor is the rental activity encompassed by any other use defined by the [zoning] [o]rdinance. Under these circumstances, the ZHB should have broadly interpreted the term 'single-family dwelling' to allow this rental activity rather than straining to designate the activity as a prohibited lodge use, which the [zoning] [o]rdinance does not define. Therefore, the ZHB erred in concluding that [the homeowner's] short-term rentals of the [p]roperty are prohibited in the [low-density residential] [d]istrict.

Marchenko, 147 A.3d at 950-51 (footnote omitted).

This Court further explained that Albert was distinguishable given that the homeowner used the property as her primary residence, resided at the property a majority of the time and was the only family occupying the property when she resided there. We stated:

These facts distinguish the present case from Albert, where all of the residents of a proposed halfway home would reside there for an average of two to six months, and the entire population of the halfway house would turn over up to six times per year. 854 A.2d at 410. Under

17

these circumstances, the Pennsylvania Supreme Court concluded that the residents would be purely transient and, thus, could not constitute a 'family' for purposes of a single-family dwelling use. Id. at 410-11.

Marchenko, 147 A.3d at 950 n.5.

Next, in Shvekh, the homeowner owned a single-family home in the township's special and recreational (S-1) zoning district. The township's zoning officer issued a notice of violation, stating that the homeowner used the dwelling as a "tourist home," which was not permitted in the district. Id. at 410. The homeowner appealed to the ZHB. Before the ZHB, the homeowner's daughter testified that her family purchased the dwelling with the intent to occupy it as the family's primary residence; however, she was unable to do so because she and her husband were unable to sell their other home. The homeowner's daughter explained that she listed the home for rent on the website Vacation Rentals By Owner (VRBO), which advertises vacation homes. The lease agreement for the rentals required a two-night minimum stay, and no meals were provided. The homeowner's daughter testified she and her family occupied the home approximately one week per month, when it was not rented. During the 12 months prior to the hearing, she rented the dwelling 20 to 25 times. The ZHB denied the homeowner's appeal, finding: the homeowner engaged in short-term rentals of the home on a continuous basis; neither the homeowner nor her daughter claimed the home as a primary residence; and the home was rented to groups of more than three persons unrelated by blood or marriage. The ZHB concluded that using the home for short-term, transient rentals was more typical of a tourist home. Because a tourist home was not permitted in the S-1

district, the ZHB determined the use violated the zoning ordinance.  In so doing, it relied on Albert.  The homeowner appealed, and the common pleas court affirmed.

On further appeal, this Court reversed.  This Court determined that the zoning ordinance did not prohibit the owner of a single-family home from renting it out from time-to-time for vacationers.  Speaking through President Judge Leavitt, we further explained:

> AirBnB has expanded the possible uses of a single-family dwelling, and the [t]ownship can address these new uses in the [z]oning [o]rdinance.  However, amendments cannot be effected by shoe-horning a use that involves renting an entire single-family home to vacationers into the definition of 'tourist home.'  The [p]roperty meets the definition of single-family residence because it has been '*designed for or* occupied exclusively for one family.'  ZONING ORDINANCE, Article II, § 2.266(a)(emphasis added)[.]  The vacation rental of the entire home bears no relation to the bedroom-by-bedroom rental that is the hallmark of a tourist home, as the [z]oning [o]fficer herself acknowledged.  We agree with [the homeowner] that the [ZHB] sought to expand the definition of 'tourist home' to include any short term rental, without any support in the language of the [z]oning [o]rdinance.

Shvekh, 154 A.3d at 415 (record citation omitted).

This Court further stated:

> Albert is distinguishable.  It concerned a halfway house used in a 'purely transient' way.  The owners did not rent the entire house to one group for a vacation purpose but, rather, bedrooms to different individuals.  Albert is also distinguishable because the halfway house required a license.  Here, by contrast, the [ZHB] did not suggest that using a single-family dwelling for short-term vacation rentals requires a license of any type.  Further, the [p]roperty is not used in a 'purely transient' way because

19

it is occupied at least once a month by the owners and their families.

<u>Shvekh</u>, 154 A.3d at 413 (footnote omitted).

Thereafter, in <u>Slice of Life</u>, the property owner, who lived out-of-state, owned the property, which was improved with a single-family home, through a limited liability company. The owner rented the home for short-term stays as part of a larger business enterprise involving numerous properties. The home was located in a residential zoning district that only permitted single-family dwellings. The township's zoning officer issued the owner an enforcement notice, indicating the owner used the dwelling as a hotel or for transient lodging in violation of the zoning ordinance. The property owner appealed, and the ZHB denied the appeal. The common pleas court affirmed. On further appeal, this Court reversed, stating:

> While the facts in <u>Shvekh</u> and <u>Marchenko</u> are distinguishable because the owners occupied the homes a portion of the time, the controlling law is not. In <u>Marchenko</u>, the zoning ordinance did not prohibit the owner of a 'single[-]family dwelling' from renting it out. <u>Marchenko</u>, 147 A.3d at 950-51. In <u>Shvekh</u>, the [ZHB] sought to expand the definition of 'tourist home' to include any short term rental, without any support in the language of the zoning ordinance. This Court held that a vacation rental of [the] homeowner's single-family home did not meet the definition of an improper 'tourist home' contained in the township's zoning ordinance. [<u>Shvekh</u>, 154 A.3d at 408, 410-11, 413]. Referencing <u>Marchenko</u>, we noted that occupation of the premises was an important but not controlling factor. <u>Id.</u> at 413. Enterprises such as AirBnB have expanded the possible uses of single-family dwellings and a township can address such uses in the zoning ordinance. <u>Id.</u> at 415. Amendments, however, 'cannot be effected by shoe-horning a use that involves

20

> renting an entire single-family home to vacationers into the definition of "tourist home."' Id.
>
> Consequently, the [ZHB] here was required to apply the terms of the [o]rdinance as written, rather than deviating from those terms based on unexpressed policies of the [t]ownship regarding permitted uses. The [ZHB's] function is only to enforce the zoning ordinance in accordance with the law. Ludwig [v. Zoning Hearing Bd. of Earl Twp., 658 A.2d 836 (Pa. Cmwlth. 1995)]; see also Shvekh. [The] [a]ppellants have proven that ambiguity exists in the language of the [o]rdinance. Because of that ambiguity, we are required to interpret the language of the [o]rdinance in favor of the landowner and against any implied extension of restrictions on the use of one's property. Shvekh; Marchenko; Adams Outdoor Advertising, L.P.

Slice of Life, 164 A.3d at 641-42. Additionally, we declined to accept the ZHB's assertions that Albert was controlling, emphasizing that the ordinance in Albert did not define the term "family," which led the Court to examine and incorporate the generally understood meaning of that term into the ordinance in that case. Slice of Life, 164 A.3d at 638.

Most recently, in Reihner, the homeowners owned and resided at a single-family dwelling in the city's medium-low density residential zoning district, which permitted various residential uses, including single-family detached and semi-detached dwellings and group homes. The city's zoning officer issued the homeowners an enforcement notice, indicating the homeowners conducted a bed and breakfast use in violation of the zoning ordinance. The homeowners appealed to the ZHB. Before the ZHB, the homeowners admitted to receiving guests at their home who reserved their stays through Airbnb, but they maintained they did not offer breakfast to guests. Ultimately, the ZHB determined the homeowners' use of the

21

property was a prohibited bed and breakfast.  The common pleas court affirmed.  On further appeal, this Court reversed, stating:

> This case is factually distinguishable from Marchenko, Shvekh and Slice of Life.  In those three cases, the property owners rented out the entirety of their home, either during periods when they were not present at the house or exclusively as in Slice of Life, while here the [homeowners] continually reside in their home during AirBnB guest stays.  Furthermore, unlike Marchenko, Shvekh and Slice of Life, only the present matter before this Court presents the issue of whether the property owners have engaged in a 'Bed and Breakfast Use.'  Nevertheless, the controlling law in this trio of cases also applies here.  Like the present case, each of Marchenko, Shvekh and Slice of Life concerns an attempt by a [ZHB] to apply the zoning ordinance to a new form of economic activity occurring in single-family homes that was facilitated and expanded by internet services like Airbnb.  However, in each of those cases, this Court ruled that the [ZHB] overstepped its authority under its ordinance, 'advanc[ing] a new and strained interpretation of its zoning ordinance in order to effect what it would like the ordinance to say,' 'shoehorning' the use in question into an unsuitable existing category of uses in the ordinance.  Shvekh, 154 A.3d at 414-15.

> Our review of the present case accordingly requires that we determine whether the [o]rdinance unambiguously prohibits the type of rental activity occurring on the [p]roperty that would allow the [c]ity to constrain the [homeowners] use of their [p]roperty.  We conclude that it does not.

Reihner, 176 A.3d at 402.

Applying the principles gleaned from these cases, the trial court here correctly determined that, because the zoning ordinance does not prohibit

22

Landowner from using the dwelling on the subject property for short-term rentals, that use is not prohibited. Thus, because the dwelling on the subject property meets the zoning ordinance's definition of a "single[-]family detached dwelling," a permitted use in the BMP and AP districts, Neighbors' claims to the contrary fail. Further, to the extent there is any ambiguity in the relevant zoning ordinance definitions, the language of the zoning ordinance must be interpreted in favor of Landowner and against any implied extension of restrictions on the use of the subject property. Adams Outdoor Advert.

In addition, in Marchenko, Shvekh, and Slice of Life, this Court rejected attempts to apply our Supreme Court's decision in Albert in a manner that would prohibit short-term rentals of single-family dwellings, where the zoning ordinances did not prohibit such activity. Further, unlike in Albert, which concerned "a halfway house for recovering alcoholics and drug-addicts[,]" Albert, 854 A.2d at 402, Landowner is not using the dwelling on the subject property in a *purely* transient manner. Indeed, the record here reveals that the dwelling on the subject property is used by or available for use by Landowner and his family for a majority of the year and rented out in its entirety for short-term rentals (primarily through the website HomeAway[11]) approximately 30% of the year. R.R. at 475a-76a. Also, in Albert, the ordinance did not define the term "family," while the zoning ordinance here employs a broad definition of that term. Additionally, Neighbors rely on Albert for the proposition that a profit motive is inconsistent with single-family dwelling use. While the Court in Albert discussed whether a profit motive was incompatible with the single-family concept, it decided the record facts of profit motive were not

---

[11] https://www.homeaway.com (last visited September 21, 2018).

23

conclusive. Moreover, while Neighbors offer conclusory assertions that Landowner's profit motive is incompatible with single-family dwelling use here, they do not develop these bare assertions nor do they provide citations to the record or other authority.

In addition, although Neighbors correctly note that our Supreme Court granted allowance of appeal in Slice of Life,[12] the zoning ordinance definition of "Family" in that case is materially different from the definition of "family" here, because it required a familial relationship between the occupiers. Slice of Life, 164 A.3d at 637 (defining "Family" as "[o]ne or more person[s], occupying a dwelling unit, related by blood, marriage, or adoption, living together as a single housekeeping unit and using cooking facilities and certain rooms in common.") (Emphasis added.) Further, unlike in Slice of Life where the property owner used the dwelling on his property exclusively for short-term rentals, in this case Landowner and his family use the dwelling on the subject property substantially throughout the year and rent it on a short-term basis approximately 30% of the year. Moreover, until our Supreme Court renders its decision in Slice of Life, this Court's decision remains binding precedent.

Based on the foregoing, we affirm.

ROBERT SIMPSON, Judge

---

[12] Slice of Life, LLC v. Hamilton Township Zoning Hearing Board, 180 A.3d 367 (Pa. 2018) (granting allowance of appeal on the issue of "[w]hether the Commonwealth Court disregarded the binding precedent of th[e] [Supreme] Court, set forth in the case [of] [Albert], by finding that the purely transient use of a property as part of a commercial short-term vacation rental business was a permitted use in a residential zoning district?").

24

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Cheri Ann Leinberger, Matthew S. Leinberger, Daniel P. Seneca, Kathleen A. Seneca and William J. Necker, | : : : | |
| Appellants | : | |
| | : | No. 1620 C.D. 2017 |
| v. | : | |
| | : | |
| Anthony G. Stellar, as Trustee of the Deborah E. Stellar Revocable Trust | : : | |

# **O R D E R**

**AND NOW**, this 11th day of October, 2018, the order of the Court of Common Pleas of Lehigh County is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge