IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Samar, : 
                Appellant : 
  :  No.  922 C.D. 2018
            v. : 
  :  Submitted:  December 14, 2018
Zoning Board of Upper Merion : 
Township : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                    FILED:  April 16, 2019


       John Samar (Landowner) appeals, *pro se*, from the June 4, 2018 order of the Court of Common Pleas of Montgomery County (trial court) denying his appeal and affirming the decision of the Zoning Hearing Board of Upper Merion Township (Board), which upheld a zoning enforcement notice finding Landowner in violation of the Upper Merion Township Zoning Code (Zoning Code) and denied Landowner's request for a special exception and variance.


**Facts and Procedural History**

       Landowner owns a property located at 116 Ivy Lane, King of Prussia, Montgomery County, Pennsylvania.  The property is in an area zoned C-O (Commercial Office) under the Zoning Code, but maintains a preexisting

nonconforming use as a single-family dwelling. On May 24, 2017, Brian Sakal, a building official of the Upper Merion Township Public Works/Safety and Codes Department, issued Landowner a zoning enforcement notice alleging that he was in violation of sections 165-5 and 165-96 of the Zoning Code[1] by using his single-family dwelling as an Airbnb/rooming house, which is not permitted in a C-O zoning district. (Trial court op. at 1-2.)

### Board Appeal and Hearing

On June 23, 2017, Landowner filed an appeal with the Board challenging the building official's determination regarding the use of his property. Alternatively, Landowner sought a special exception under section 165-212 of the Zoning Code[2] to convert the single-family dwelling into a multi-family dwelling as well as a variance from the requirements of section 165-96 to allow a multi-family use.

The Board conducted a public hearing on September 6, 2017, which included testimony from Landowner and Sakal, the building official who issued the May 24, 2017 zoning enforcement notice. At the beginning of the hearing, the Board's solicitor advised Landowner that the Board could not grant his request for a special exception under section 165-212 of the Zoning Code, as subsection (c) of that section requires a lot "to be two times the size of the minimum lot area in the zoning district" and Landowner's lot was "too small." (R.R. at 99a.) Hence, the Board's solicitor advised Landowner to focus his testimony on the remaining issues in his appeal.

---

[1] Section 165-5 of the Zoning Code addresses word usage and various definitions under the Zoning Code. (Reproduced Record (R.R.) at 3a-24a.) Section 165-96 simply states that the regulations that follow that section shall apply in the C-O zoning district. (R.R. at 25a.)

[2] Section 165-212, entitled conversion of dwellings, permits the conversion of a single-family dwelling into a two-family or multi-family dwelling, subject to several conditions which will be discussed in greater detail below. (R.R. at 36a.)

2

Landowner responded that he was confused because the area was originally zoned "R-3" and that he had made previous additions to the property in accordance with "the requirements and setbacks for the R-3 zoning." (R.R. at 99a-100a.) The Board's solicitor explained that the property was zoned C-O and that he had a prior, nonconforming residential use on the property. Landowner noted that following earlier improvements to the property, he was issued a certificate of occupancy for an "R-3 residential use," and alleged that he was not using the property improperly. (R.R. at 103a.) Regarding his variance request, Landowner noted that the Zoning Code permitted "multi-family residential use in the R-3 district." (R.R. at 104a.) Further, Landowner stated that he found nothing in the Zoning Code which prohibited him from using the property as an Airbnb rental.[3] *Id.*

On cross-examination by the solicitor for Upper Merion Township (Township), Landowner admitted that the use and occupancy permit that he referenced stated that the property was located in a C-O zoning district and specifically limited his property to a single-family residential use. Landowner also admitted that the prior building permits he received for additions/improvements to the property included a condition limiting the property to a single-family residential use. During one of these

---

[3] Landowner also submitted written testimony to the Board describing the neighborhood in which his property is located. (R.R. at 37a.) He described the property as being improved with a two-story residential structure consisting of two apartments, each with separate entries, and a total of four bathrooms and five bedrooms. *Id.* He noted that the structure was being used as a "short-term residential rental." *Id.* He addressed the previous additions/improvements to the structure and argued that it did not meet the Zoning Code's definition of a rooming house because he did not live at the property and simply rented rooms. (R.R. at 38a.) He alleged that the property met the requirements for a special exception under section 165-212 of the Zoning Code and that a multi-family residential use is an approved use in the R-3 zoning district. (R.R. at 39a.) He noted that the short-term rental use contributed to the local economy, improved the safety and welfare of the neighborhood, since the property was occupied at nights and on weekends, did not alter the essential character of the neighborhood, which consisted of mixed residential and commercial uses, and that the variance he requested was the minimum necessary to afford relief. *Id.*

3

projects, Landowner acknowledged that he added a kitchen to a second-floor addition without obtaining the necessary permits, thereby allowing the existing structure to be occupied by two separate families. Landowner agreed that the structure was advertised on Airbnb as two separate units accommodating less than 10 people, but indicated that it was also marketed as a five-bedroom single unit capable of accommodating 12 people. Landowner noted that he did not use leases but instead relied on short-term Airbnb agreements, which applied to any rental less than 30 days. (R.R. at 106a-11a.)

Landowner further acknowledged receipt of the May 24, 2017 zoning enforcement notice. (R.R. at 112a.) When asked if he agreed that the property was not being used for a single-family residential use, Landowner responded that he was "not in dispute of any of this," that he was "petitioning to get permission to use it," and that he acknowledged his "mistake of operating it the way [he] did." *Id.* Upon questioning by members of the Board, Landowner apologized for adding a second kitchen on the second floor and essentially converting the structure to a multi-family use. (R.R. at 114a-16a.) Landowner also indicated that he owned a construction company, that he did custom design/construction work for residential owners, and that he was familiar with the permitting process. (R.R. at 116a-17a.) Landowner reiterated that he "was wrong the way [he] proceeded" and that he was "going to correct it, and didn't." (R.R. at 117a.)

Sakal confirmed that Landowner's property was located in a C-O zoning district. (R.R. at 120a.) He testified that the property was nonconforming as it was originally intended as a single-family residential use. *Id.* However, he noted that the property was currently being used as a nonconforming two-family dwelling, which was not permitted. *Id.* He stated that he would classify an Airbnb rental as either a rooming house or a hotel/motel under the Zoning Code, none of which were permitted in the C-

4

O zoning district. (R.R. at 121a.) He noted that the Zoning Code defined a rooming house as "a dwelling in which sleeping accommodations are provided for fewer than 10 persons, whether or not serving meals is included" and that a hotel was defined in the same manner but with 10 or more guests. *Id.*

On cross-examination by Landowner, Sakal could not point to a specific section of the Zoning Code prohibiting short-term residential rentals. (R.R. at 123a.) Instead, he stated that Airbnb rentals, hotels, and motels are not permitted in Landowner's district and that, generally, if a use is not specifically authorized in the Zoning Code, then it is not permitted. *Id.* Sakal acknowledged that Landowner could rent the structure as a single-family dwelling. (R.R. at 124a.)

Saleem Hasan, the owner/operator of a biomedical engineering business next door to Landowner's property, objected to the applications. (R.R. at 136a-37a.) Hasan testified that his personal office was approximately 20 feet from the entrance to the structure on Landowner's property and he was exposed to excessive noise from renters over the past year. (R.R. at 137a-38a.)

At the conclusion of the hearing, the Board voted unanimously to deny Landowner's appeal from the zoning enforcement notice and his requests for a special exception and variance, and directed Landowner to remove the second-floor kitchen within 30 days. (R.R. at 140a-41a.)

**Board Decision**

The Board mailed Landowner a written decision on October 5, 2017. The Board found that Landowner's property is located in a C-O zoning district, in which a residential use is not permitted. (Findings of Fact Nos. 2, 3.) The Board noted that Landowner's property contained a lawful, nonconforming, single-family detached

5

dwelling. (Finding of Fact No. 3.) The Board stated that Landowner converted this single-family detached dwelling into a two-family Airbnb rooming house by adding a second kitchen and creating two separate units, without obtaining necessary Township approval or permits. (Finding of Fact No. 4.)

The Board indicated that Landowner did not request a dimensional variance even though the property does not meet the dimensional standards for conversion to a two-family dwelling. (Finding of Fact No. 8.) The Board then noted the definition of a rooming house under section 165-5 of the Zoning Code, and that Landowner had not requested relief to operate a rooming house on his property. (Findings of Fact Nos. 10, 11.)

With respect to Landowner's appeal from the zoning enforcement notice, the Board cited to its jurisdiction under section 909.1(a)(3) of the Pennsylvania Municipalities Planning Code (MPC),[4] which states,

> The zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in the following matters:
>
> . . .
>
> (3) Appeals from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit, or failure to act on the application therefor, the issuance of any cease and desist order or the registration or refusal to register any nonconforming use, structure or lot.

53 P.S. §10909.1(a)(3).[5] The Board noted that the zoning enforcement notice identified the violation as the use of an existing single-family dwelling as an Airbnb

---

[4] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 87 of the Act of December 21, 1988, P.L. 1329, 53 P.S. §10909.1(a)(3).

[5] *See* Board op. at 10-11; R.R. at 53a-54a.

6

rooming house, which was not permitted in the C-O zoning district, and directed Landowner to return to the single-family use and to remove the second-floor kitchen. (R.R. at 54a.) The Board also noted that Landowner admitted that he installed the second kitchen without the necessary permits and that he needed to obtain zoning relief to add a second dwelling unit to the property. *Id.* Based on the evidence presented at the hearing, including Landowner's admissions, the Board found that Landowner was using his property in violation of the Zoning Code and, hence, the denial of his appeal from the zoning enforcement notice was proper. (R.R. at 55a.)

With respect to Landowner's request for a special exception, the Board reiterated the requirements under section 165-212 of the Zoning Code and noted that Landowner's property did not meet the same. (R.R. at 56a-57a.) Specifically, the Board cited section 165-212 of the Zoning Code, entitled "Conversion of dwellings," which provides as follows:

> A single-family detached dwelling existing on the effective date of this chapter may be converted into and used as a two-family or multifamily dwelling when authorized as a special exception, provided that:
>
> A. The plans for the conversion of said dwelling shall be submitted to the Zoning Hearing Board.
>
> B. Such plans shall provide adequate and suitable parking or storage space, at a safe distance from the public highway, for not less than one automobile per family.
>
> C. Such dwelling shall be subject to the height, area, width and yard regulations effective in the district wherein such dwelling is situated, **except that there shall be a lot area of not less than the product of the minimum lot area prescribed in the district regulations and the number of families for the use of which such dwelling is to be converted**.

7

D. There shall be no external alteration of the building except as may be necessary for reasons of safety, and fire escapes and outside stairways shall, where practicable, be located to the rear of the building.

E. The Zoning Hearing Board shall specify the maximum number of families permitted to occupy such dwelling and may prescribe such further conditions and restrictions with respect to the conversion and use of such dwelling and to the use of the lot as the Board may consider appropriate.

(R.R. at 56a-57a) (emphasis added).  The Board stated that the minimum lot area in the C-O zoning district was 20,000 square feet, thereby requiring Landowner's lot to be 40,000 square feet (twice the size of the minimum lot area), but that said lot was "undersized" at only 10,748 square feet.  (R.R. at 57a.)   Additionally, the Board indicated that Landowner failed to submit any plans for conversion of his dwelling or any plans demonstrating "adequate and suitable parking or storage areas, at a safe distance from the public highway, for not less than one automobile per family."  (R.R. at 58a.)

With respect to Landowner's request for a use variance, the Board cited the traditional variance requirements under section 910.2(a) of the MPC,[6] namely

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be

---

[6] Added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10910.2(a).

8

developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 P.S. §10910.2(a)(1)-(5).[7] The Board stated that Landowner failed to prove that there were any unique physical circumstances or conditions peculiar to the property, or that the requested variance was necessary for the reasonable use of the property. (R.R. at 59a.) The Board noted the lack of any evidence that an unnecessary hardship existed on the property, that the property could not be used for its permitted single-family dwelling use, or that the property had no value, or only distress value. (R.R. at 60a.) The Board explained that Landowner's desire to convert the property into a two-family dwelling, thereby doubling the number of units available for rent, was "legally insufficient to entitle Landowner to the requested use variance." *Id.* The Board held that Landowner failed to prove that the requested use variance was the minimum necessary to afford relief, stressing that the property could be used for its permitted purpose. (R.R. at 61a.) To the extent that any hardship existed, the Board indicated

---

[7] *See* R.R. at 58a.

that it was self-created by Landowner by adding the second kitchen and marketing the property as a two-unit Airbnb rental. *Id.*

Based upon the above findings, the Board concluded that Landowner was operating his property in violation of the Zoning Code; Landowner failed to meet the requirements for a special exception to convert his property into a multi-family dwelling under section 165-212 of the Zoning Code; a use variance is not necessary to permit a reasonable use of the property; any alleged hardship was self-created by Landowner; and Landowner failed to demonstrate that the requested use variance represented the minimum necessary to afford relief. (Board's Conclusions of Law Nos. 8-12.)

## Appeal of Board's Decision

Landowner originally filed a land use appeal with the trial court on October 5, 2017, the same day that the Board mailed its written decision. However, Landowner filed an amended appeal on October 25, 2017.[8] The trial court heard oral argument on May 25, 2018. By order dated June 4, 2018, the trial court denied Landowner's appeal and affirmed the Board's order in its entirety. Landowner then filed a notice of appeal with this Court. Upon direction by the trial court, Landowner

---

[8] On November 21, 2017, the Board and the Township filed a joint motion seeking to quash/dismiss Landowner's appeal on the basis that he failed to appeal the Board's written decision and consistently sought to appeal the Board's decision entered at the conclusion of the hearing on September 6, 2017. By order dated March 12, 2018, the trial court denied the motion. (Supplemental Reproduced Record (S.R.R.) at 437b.) In their joint brief, the Board and the Township urge this Court to reconsider this jurisdictional question and quash and/or dismiss Landowner's appeal. We decline to do so. Landowner timely filed an amended appeal with the trial court on October 25, 2017, in response to the Board's written decision. The fact that Landowner, who was acting *pro se*, mistakenly referenced his appeal as being from the Board's September 6, 2017 decision is not a sufficient reason to justify quashing and/or dismissing said appeal.

10

filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

The trial court subsequently issued an opinion in support of its order in accordance with Pa.R.A.P. 1925(a). In its opinion, the trial court first addressed the Board's denial of Landowner's appeal from the zoning enforcement notice. While Landowner raised five separate arguments in his 1925(b) statement as to how the trial court erred,[9] the trial court noted that only one of these issues, *i.e.*, whether the Board erred in concluding that Landowner was operating a rooming house, was raised before the Board. The trial court explained that the property was designated for a nonconforming single-family residential use, yet Landowner was operating a two-unit Airbnb/rooming house on the property, which violated the Zoning Code. The trial court cited the definition of a "rooming house" under the Zoning Code noted above and the definition of "family" under section 165-5 of the Zoning Code, which "specifically excludes individuals and groups occupying a boarding or rooming house." (Trial court op. at 7.)

The trial court next addressed the Board's denial of Landowner's request for a special exception. The trial court stated that the Board properly concluded that Landowner failed to demonstrate compliance with the objective criteria and prerequisites for conversion of the existing single-family dwelling. The trial court

---

[9] Specifically, Landowner alleged that the trial court erred in affirming the Board's decision because (1) the Board held a building code enforcement hearing for the building official and not a zoning use determination hearing for the zoning officer; (2) he was not operating a rooming house as the Board concluded; (3) the Board did not follow the clear mandate of section 909.1 of the MPC regarding hearing appeals of zoning officer determinations; (4) the wording of the enforcement notice letter did not match the stated zoning code violation cited in the Board's decision; and (5) the enforcement notice did not follow the clear mandate of section 616.1 of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10616.1, relating to the standard for issuing enforcement notices.

11

noted that section 165-212(c) of the Zoning Code mandates that a converted dwelling "shall be subject to the height, area and width and yard regulations effective in the district wherein such dwelling is situated." (S.R.R. at 280b.) Since the property was located in the C-O zoning district, the trial court noted that the minimum required lot area would be 20,000 square feet under section 165-99 of the Zoning Code, but that Landowner's property was required to be 40,000 square feet because he was proposing two dwelling units. This is because section 165-212(c) requires the minimum lot area of a converted dwelling to be "not less than the product of the minimum lot area prescribed in the district regulations and the number of families for the use of which such dwelling is to be converted." *Id.* The trial court indicated that Landowner's property here only consisted of 10,748 square feet and he did not offer any contrary evidence or seek a dimensional variance at the Board hearing.

Finally, the trial court addressed the Board's denial of Landowner's request for a use variance. After citing the traditional requirements for a variance under section 910.2(a) of the MPC and noting that the failure to satisfy any one of these requirements requires denial of a variance, the trial court stated that Landowner admitted to installing a second kitchen on the second floor of the property knowing that he did not have a permit to do so and knowing that his use and occupancy permit specifically conditioned the use of the property as a single-family residential dwelling. The trial court stressed that Landowner was in the construction business, was familiar with the permitting process, and acknowledged that he knew what he did was wrong. Hence, the trial court indicated that the Board properly found that any hardship was self-created by Landowner and, hence, he could not meet all of the requirements for a variance.

## Discussion

On appeal,[10] Landowner reiterates the arguments he raised before the trial court, *i.e.*, that the Board erred in upholding the zoning enforcement notice finding him in violation of the Zoning Code and erred in denying his requests for a special exception and variance.

## Zoning Enforcement Notice

Similar to his appeal to the trial court, Landowner raises a number of issues that he never raised before the Board. Specifically, Landowner reiterates the Board's alleged errors regarding the fact that the zoning enforcement notice was issued by a building official and not the zoning officer; the Board did not follow the proper procedure for hearing appeals of zoning officer determinations; and the Board misrepresented the zoning code violation for which he was cited. Landowner also raises an entirely new issue alleging that the Board violated his constitutional rights by restricting a legal land use with wording that does not exist in the Zoning Code. However, none of these issues were raised before the Board. Hence, as the trial court properly noted, these issues have been waived and will not be addressed on appeal. An issue must be raised before the Board in order to preserve it for appeal. *Poole v. Zoning Board of Adjustment*, 10 A.3d 381 (Pa. Cmwlth. 2010) (holding that issues raised for the first time on appeal before the common pleas court are waived).

The only issue that Landowner properly raised and preserved below is whether his use of the property constituted a rooming house in violation of the Zoning

---

[10] Where, as here, the trial court takes no additional evidence, our scope of review is limited to determining whether the Board committed an abuse of discretion or an error of law. *Hamilton Hills Group, LLC v. Hamilton Township Zoning Hearing Board*, 4 A.3d 788, 792 n.6 (Pa. Cmwlth. 2010).

13

Code. Given the definitions contained within the Zoning Code, coupled with the Zoning Code's lack of a definition of the term "Airbnb," we must agree with Landowner that the trial court erred in denying his appeal of the zoning enforcement notice. Landowner's use of his property as an Airbnb simply did not violate the Zoning Code in effect at the time of the purported violation.[11]

Landowner was issued the zoning enforcement notice for operating an Airbnb/rooming house under section 165-5 of the Zoning Code. This section sets forth the definitions of the terms used therein. Under this section, a "**house, rooming**" is defined as "[a] **dwelling** in which sleeping accommodations are provided for fewer than 10 persons, whether or not serving meals is included." (R.R. at 12a) (emphasis added). However, this same section defines a "**dwelling**" as "[a] building designed for and occupied exclusively for residence purposes, **excluding** hotel, **rooming house**, tourist home, institutional home, residential club, automobile court and the like." (R.R. at 8a) (emphasis added). Thus, a dwelling cannot be a rooming house and a rooming house cannot be a dwelling under the Zoning Code. In other words, the terms are mutually exclusive. The ordinance does not contain any definition of "Airbnb," nor is it referenced anywhere in the ordinance.

"The issue of whether a proposed use falls within a given category of permitted use in a zoning ordinance is a question of law, subject to this Court's review." *Caln Nether Co., L.P. v. Board of Supervisors*, 840 A.2d 484, 491 (Pa. Cmwlth. 2004). "In considering this issue, we are mindful that ordinances are to be construed expansively, affording the landowner the broadest possible use and enjoyment of its land." *Id.* Moreover, "[A]ny ambiguity and conflict in the language of an ordinance

---

[11] We note that Landowner was never cited for improperly converting his property from a single-family use to a multi-family use. The zoning enforcement notice was limited to Landowner's improper use of his property as an Airbnb/rooming house.

14

must be resolved in favor of the landowner and the least restrictive use of the land." *Reihner v. City of Scranton Zoning Hearing Board*, 176 A.3d 396, 400 (Pa. Cmwlth. 2017).

Furthermore, this Court has repeatedly cautioned zoning hearing boards against attempts to shoe-horn a new, unanticipated use, particularly for a new form of economic activity occurring in a single-family home, into an existing defined term of a local zoning ordinance. *See Reihner* (reversing a notice of violation issued to landowners for purportedly operating a bed and breakfast at their home); *Shvekh v. Zoning Hearing Board*, 154 A.3d 408 (Pa. Cmwlth. 2017) (reversing an enforcement notice issued to landowners for purportedly operating a tourist home at their property); *Marchenko v. Zoning Hearing Board of Pocono Township*, 147 A.3d 947 (Pa. Cmwlth. 2016) (reversing a notice of violation issued to landowner for purportedly operating a vacation rental and/or lodge at her residence). In *Reihner* and *Shvekh*, we explained that the internet, and Airbnb in particular, has expanded the possible uses of a single-family dwelling and that local municipalities can address these new uses by updating their respective local ordinances.

In the present case, the Zoning Code does not specifically prohibit Landowner from renting out his property as an Airbnb. Indeed, this term is not defined anywhere in the Zoning Code. The attempt by Sakal, the local building official, to shoe-horn Landowner's use into an impermissible rooming house use under the Zoning Code fails for the reasons set forth above. It is incumbent upon the Township to update its Zoning Code to specifically address this new use by Landowner and potentially other property owners within its jurisdiction.

## Special Exception

Next, we address whether the Board erred in denying Landowner's request for a special exception. We agree with the trial court that the Board properly concluded that Landowner failed to demonstrate compliance with the objective criteria and prerequisites for conversion of the existing single-family dwelling.

However, before we reach the merits of this argument, we note that Landowner argues that the Board violated his constitutional rights by failing to convene a special exception hearing and making specific findings of fact relative to said exception; erred in concluding that he never requested a dimensional variance; and exhibited hostility and bias throughout the course of the hearing. These arguments lack merit. The Board declined to proceed with further proceedings relating to Landowner's special exception request because it was clear, as will be discussed below, that he could not meet the requirements for the same. Additionally, there is nothing in the record indicating that Landowner ever requested a dimensional variance. Further, a review of the transcript from the Board's hearing reveals no evidence of any hostility or bias towards Landowner.

Turning to the merits, at the outset of the Board hearing, the Board solicitor advised Landowner to focus his arguments on the zoning enforcement notice and request for a variance because the Board could not grant his request for a special exception under section 165-212 of the Zoning Code. The solicitor explained that subsection (c) of that section requires a lot "to be two times the size of the minimum lot area in the zoning district" and that Landowner's lot was simply "too small." (R.R. at 99a.) As the Board later explained in its written decision, section 165-212(c) specifically provides that when a property owner seeks to convert a single-family dwelling into a two-family or multi-family dwelling,

16

Such dwelling shall be subject to the height, area, width and yard regulations effective in the district wherein such dwelling is situated, **except that there shall be a lot area of not less than the product of the minimum lot area prescribed in the district regulations and the number of families for the use of which such dwelling is to be converted**.

(S.R.R. at 280b) (emphasis added).

Since Landowner's property was located in a C-O zoning district and he sought to convert the dwelling into two units, the Board properly noted that Landowner's property had to consist of 40,000 square feet. Section 165-99 of the Zoning Code provides that the minimum required lot area in the C-O zoning district is 20,000 square feet. Because Landowner was proposing two dwelling units, he was required to have a lot twice that size, or 40,000 square feet. However, Landowner's lot did not meet this requirement because it only consisted of 10,748 square feet. Moreover, as the Board indicated, Landowner failed to submit any plans for conversion of his dwelling or any plans demonstrating "adequate and suitable parking or storage areas, at a safe distance from the public highway, for not less than one automobile per family." (R.R. at 58a.) Thus, Landowner could not meet the requirements of section 165-212 of the Zoning Code and the Board did not err in denying his request for a special exception.

## Variance

Finally, we address whether the Board erred in denying Landowner's request for a variance.[12] Once more, we agree with the trial court that the Board

---

[12] Landowner argues that the Board violated his constitutional rights by failing to convene a variance hearing. However, this argument is meritless. The Board conducted a public hearing in relation to Landowner's requested variance and provided him with a full opportunity to present witnesses and evidence in support of his request.

17

properly concluded that any purported hardship relating to the property was self-created by Landowner and, hence, he could not meet all of the requirements for a variance.

The Board noted the requirements for a variance under section 910.2(a) of the MPC were not met here, including the need for there to be "unique physical circumstances or conditions" of the property precluding any "possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance," and that any unnecessary hardship was not created by the property owner himself. Additionally, a variance is appropriate "only where the *property*, not the person, is subject to hardship." *Yeager v. Zoning Hearing Board of Allentown*, 779 A.2d 595 598 (Pa. Cmwlth. 2001). Unnecessary hardship can be demonstrated by showing that,

> (1) the physical characteristics of the property are such that it could not be used for a permitted use; (2) that the physical characteristics could only meet the requirements established for a permitted use at a prohibitive expense; or (3) that the characteristics of the area were such that the lots had either little or no value for *any* permitted use.

*Beecham Enterprises, Inc. v. Zoning Hearing Board*, 556 A.2d 981, 986 (Pa. Cmwlth. 1989). However, where the asserted hardship simply amounts to a property owner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a variance is not satisfied. *Society Hill Civic Association v. Philadelphia Zoning Board of Adjustment*, 42 A.3d 1178, 1187 (Pa. Cmwlth. 2012).

In the present case, Landowner failed to offer any testimony relating to a hardship, let alone the unnecessary hardship required for a variance. Landowner admitted to adding a kitchen to the second floor of the dwelling on the property and to

18

advertising the rental of the same as two units, which, as noted above, constituted a violation of the Zoning Code. Hence, as the trial court indicated, any hardship here was created by Landowner himself. The dwelling on the property constitutes a nonconforming single-family residential use in the C-O zoning district. Landowner failed to establish that such permitted use of the dwelling could not continue or that utilizing the dwelling in such a manner was prohibitively expensive. Nor did Landowner establish that the property had no value or distressed value. To the contrary, in requesting a variance, Landowner merely sought to "ratify his intentional and illegal conversion of a single-family detached dwelling into a two-family detached dwelling and to double the number of dwelling units for rent on the [property]," only to increase the profitability of said conversion. (Board's Brief at 33-34.) For these reasons, the Board did not err in denying his request for a variance.

## Conclusion

The evidence of record before the Board established that Landowner was using the single-family residential dwelling on his property as an Airbnb/rooming house. However, such a use is not specifically prohibited in a C-O zoning district and could not serve as a basis to find that Landowner violated the Zoning Code. Hence, the Board erred in upholding the zoning enforcement notice. However, because the limited lot size of Landowner's property precludes the conversion of the dwelling thereupon from a single-family to a two-family or multi-family dwelling, the Board did not err in denying Landowner's request for a special exception. Likewise, because Landowner failed to establish any unnecessary hardship relating to the property, and any purported hardship was self-created by Landowner, the Board did not err in denying his request for a variance.

19

Accordingly, the order of the trial court is reversed insofar as it upheld the zoning enforcement notice finding Landowner in violation of the Zoning Code. In all other respects, the trial court's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Samar, : 
             Appellant : 
              :   No.  922 C.D. 2018
          v. : 
              : 
Zoning Board of Upper Merion : 
Township : 

## *ORDER*

AND NOW, this 16th day of April, 2019, the order of the Court of Common Pleas of Montgomery County (trial court), dated June 4, 2018, to the extent that it upheld the zoning enforcement notice finding John Samar in violation of the Upper Merion Township Zoning Code, is reversed. In all other respects, the trial court's order is affirmed.

The request of the Zoning Board of Upper Merion Township and Upper Merion Township to quash/dismiss Samar's appeal is denied.

_____
PATRICIA A. McCULLOUGH, Judge